615 A.2d 792

**In re Edward H. BENSON, Settlor to Meridian Trust Company Substitute for American Bank and Trust Co. of Pa.**

**Appeal of Kurt Ross KENDALL, Travis Edward Kendall, and Carol Lynn Benson Kendall, Appellants.**

Superior Court of Pennsylvania.

Argued June 24, 1992.

Filed Nov. 6, 1992.

584

Carol L.B. Kendall, pro se.

Carl T. Work, Reading, for Meridan Trust Co., participating party.

Before JOHNSON, FORD ELLIOTT and HOFFMAN, JJ.

JOHNSON, Judge.

Carol Lynn Benson Kendall (Kendall) appeals from the November 27, 1990, order confirming the account in the above-captioned action issued in the Orphans' Court of Lancaster County. We affirm.

The underlying facts of this case may be summarized as follows: In November 1980, Edward H. Benson died survived by his wife, Margaret H. Benson, and three children: Steven W. Benson, Scott R. Benson and Kendall. Edward Benson, prior to his death on November 4, 1980, had executed a revocable life insurance trust agreement providing: (1) for his control of the income and principal as long as he lived; (2) at his death, income was to go to his surviving spouse, Margaret; (3) at her death, the principal was to be divided into separate trusts for his then living children, with income and a periodic

payment of 2% of the principal going to each child for life; and, (4) at each child's death, the then remaining principal was to go to an appointee of the child or to his or her issue, if any, or otherwise, to the issue of the settlor.

On July 9, 1985, Margaret H. Benson, the settlor's spouse, and Scott R. Benson, the adopted son of the settlor, died. On July 25, 1989, the trustees received a "disclaimer" signed by Kendall in which Carol Lynn Benson Kendall purported to disclaim her interest in the income, the 2% periodic payments and the principal of the Scott R. Benson Trust. Notwithstanding that she had been advised by both the trustees and the court that she could not disclaim the principal, Kendall, appearing *pro se*, filed exceptions to the First and Final Account and the Adjudication of the Scott R. Benson Trust, arguing that she had validly disclaimed her one-half interest in the Scott R. Benson trust in favor of her sons. She also demanded an accounting and the replacement of the trustees. The trial court entered the November 27, 1990, order which, *inter alia*, confirmed the account and directed the trustees to honor Kendall's "disclaimer," allowing Kendall's interest in the income and the 2% principal of the Scott R. Benson Trust to be paid to her sons. This appeal followed.

■ Our standard of review from a final order of the Orphans' Court Division requires that we accord the findings of an Orphans' Court, sitting without a jury, the same weight and effect as the verdict of a jury; we will not disturb those findings absent manifest error; as an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are not supported by competent or adequate evidence or if there has been an error of law, an abuse of discretion, or a capricious disbelief of competent evidence. *Estate of Keefauver*, 359 Pa.Super. 336, 518 A.2d 1263 (1986); *Estate of Kovalchick*, 345 Pa.Super. 229, 498 A.2d 374 (1985); *Estate of Gilbert*, 342 Pa.Super. 82, 492 A.2d 401 (1985).

The trustees assert that Kendall's claim arises from two fundamental misconceptions: (1) that Scott's share was and remains a separate independent trust, and (2) that she is

entitled to one-half the principal of Scott's share outright. Kendall charges that the stated provisions of the trust instrument have been breached. Brief at 12. She contends that she is entitled to a one-half share of the principal of the Scott R. Benson Trust, including accrued income, and any 2% principal payments which may have been held in escrow. We disagree.

The disputed paragraphs of the trust instrument provide:

C. After my wife's death (or mine if I survive her) and as soon as there is no living child of mine under twenty-five years of age, the then remaining principal shall be divided into equal shares, so that there will be one share for each child of mine who is then living or then dead, and each such share shall be kept invested as a separate trust and thereafter:

1. During each child's lifetime:

. . . . .

2. At each child's death (or at the time for the setting apart of shares in the case of a child who dies before that time), any then-remaining principal of his or her trust shall be paid:

a. . . . in default of appointment or insofar as it is not effectual,

b. To his or her then-living descendants, per stirpes; or, in default of such descendants,

c. To my then living descendants, per stirpes; (any portion thus accruing to a child for whom principal is then held in trust hereunder to be added to and treated as a part of such principal); or, in default of such descendants,

Turning now to the facts of this case: The settlor's youngest son Scott was killed at the same time as his mother. Scott's share was put in escrow by the trustees, while they awaited the outcome of a paternity action to determine whether Scott had any surviving heirs. Since the Florida paternity claimant was found not to be Scott's surviving heir, Scott was ruled to have died without issue at the same time as his mother. Once it was determined that Scott had died without issue, the

trustees returned the escrow amount in the event Scott had surviving heirs and the accumulated interest to the settlor's trust for distribution to the trusts established for the settlor's two surviving children.

The distributive scheme of Edward H. Benson established a lifetime trust to provide for the welfare of his wife and himself; he also established a residuary trust from which his wife, if she survived him, was to receive the net income and so much of the principal as thought desirable by the trustee, taking other available income into account. Upon his wife's death, with no surviving child under the age of twenty-five, the remaining principal was to be equally divided into shares, with each share then invested as a separate trust. From these equal trusts, once established, the children of the settlor during their lifetime were to receive the net income and an amount equal to 2% of the principal, to be determined at the formation of the individual trusts, quarterly. Upon the death of a surviving child of the settlor, the remaining principal was to be paid to his appointees, his then living descendants per stirpes, to the settlor's then living descendants per stirpes, or to the settlor's intestate heirs as provided under the laws of this Commonwealth.

The trustees, however, maintain that according to the settlor's wishes, as expressed in the provisions of the trust instrument, no child of the settlor had any right to the remaining principal, except upon application to the trustees. Since the trustees had the sole discretion to grant or not to grant such application, the successor trusts, the separate trusts, were also spendthrift trusts. Consequently, the beneficiaries, of which Kendall was one, could not assign or appoint nominees to receive that principal. *Borsch Estate,* 362 Pa. 581, 67 A.2d 119 (1949).

While it is clear that where a spendthrift trust is in issue, the courts will uphold the spendthrift provisions as a means to enforce the settlor's right to dispose of his property as he chooses, it is also clear that in the absence of statutory language overriding a trust provision, the trust provision will be enforced. *Id.* The polestar in every trust is the settlor's

intent and that intent must prevail. *In re Pew's Estate,* 411 Pa. 96, 191 A.2d 399 (1963). It is also well-established that "the writing itself must be considered to be the best and controlling evidence of the settlor's intent." *In re Girard Trust Corn Exchange Bank,* 418 Pa. 112, 116, 208 A.2d 857, 859 (1965). Moreover, courts cannot rewrite a settlor's deed of trust or distort his language or the language of a statute in order to attain what is believed to be beneficial or wise or even what it is believed that the settlor would or should have provided if he possessed a knowledge of all presently existing circumstances. *In re Kelsey's Estate,* 393 Pa. 513, 143 A.2d 42 (1958).

Mindful of this standard, we turn to the facts of the present case. Contrary to the argument of the trustees, the settlor provided a scheme of distribution that treated all of his children equally when all of his children were alive and equally when all of his children were dead. The scheme provided that at the death of each child, "the remaining principal of his or her trust shall be paid, in descending order, to: (1) as he or she may appoint by will, (2) to his or her descendents, per stirpes, (3) the settlor's then living descendants, per stirpes, or (4) the settlor's intestate heirs." Trust Instrument, dated 9/30/80 at 5.

The trustees have advanced no reasonable basis for attributing to the settlor's scheme, the division of the trust corpus made by them on November 27, 1985, following the death of Mrs. Benson. The trustees established a trust for Kendall, a trust for Steven and a share for Scott.

The trust instrument directs that a trust be established "for each child then living or then dead." The trustees' claim that, had the paternity action against Scott succeeded, the paternity claimant would have been the beneficiary of this share is specious. It is patent that the paternity claimant would have succeeded to Scott's trust. The Trustees assertion that Kendall "never had an interest in the principal of Scott's share because now that the factual situation has been determined by the Court, the whole trust should have been divided into two parts" is incorrect. Brief at 4. The trust instrument

provides that the trustees create as many trusts as there are children, either living or dead. Kendall has properly argued that technically the trustees have breached the terms of the trust instrument by creating a "share" for Scott that was not a trust.

 The terms of the trust instrument provide "[a]t each child's death (or at the time for the setting apart of shares in the case of a child who dies before that time), any then remaining principal shall be paid," (in default of the power of appointment and with no descendants surviving Scott), to the then living descendants of the settlor, per stirpes, with the proviso that "(any portion thus accruing to a child for whom principal is then held in trust hereunder to be added to and treated as a part of such principal)." This proviso, though inartfully drafted, clearly modifies "[t]o my then living descendants, per stirpes." The trust instrument requires the trust portion of a deceased child to be paid into the trust of a living descendant of the settlor, if such descendant is the beneficiary of a trust under the trust instrument. Kendall is the beneficiary of such a trust, hence the principal due to her from Scott's trust is added to her trust. Words contained in a deed of trust are to be interpreted according to their usual and generally accepted meaning in the absence of a clear intention to the contrary. *Schellentrager v. Tradesmans National Bank & Trust Co.*, 370 Pa. 501, 88 A.2d 773 (1952). In addition, we may not discard carefully worded language in a trust instrument as meaningless surplusage in construing the trust. *In re Ferguson*, 354 Pa. 367, 47 A.2d 245, 165 A.L.R. 772 (1946).

In view of this interpretive standard, we are constrained to conclude that the trial court did not err in sustaining the Trustees' Preliminary Objections and dismissing Kendall's Exceptions to the Adjudication since the trustees properly added the one-half principal of Scott's trust to Kendall's trust as the language of the trust instrument provided. It is, of course, well-settled that we may affirm the order of the trial court on appeal where it is correct on any legal ground or

590

theory, regardless of the reason relied upon by the trial court. *Johnson v. Johnson,* 410 Pa.Super. 631, 600 A.2d 965 (1991).

 Next we address the effect of the "disclaimer." The trustees contend that the disclaimer filed by Kendall was effective only with respect to the income and the periodic payments from Scott's share but ineffective with regard to Scott's principal. Since the trial court recognized the disclaimer to be effective with respect to income and the 2% periodic payments from principal, we address only the effectiveness of the disclaimer with regard to Kendall's claimed entitlement to one-half of Scott's trust share. It is clear that the operative paragraph of the trust instrument provides, that, in the event of Scott's death, given a failure to exercise the power of appointment by Scott, and in default of surviving direct descendants of Scott, the share devolves to the "then-living descendants, per stirpes" of Scott's father, the settlor. Trust Instrument ¶ C(2)(c). This paragraph also contains the proviso that:

( [A]ny portion thus accruing to a child for whom principal is then held in trust hereunder to be added to and thereafter treated as a part of such principal);

Kendall has conceded that she has principal held in trust pursuant to this trust instrument. Hence the portion of Scott's trust that accrues to her must be treated as part of her own principal, to be held in trust rather than to be paid to her outright. As a result, payment of this principal to Kendall's sons as she proposes would be improper or impermissible.

In view of our analysis of the trust instrument, we find it unnecessary to address Kendall's remaining issues dealing with trustee negligence.

Order Affirmed.