631 A.2d 176

**APPEAL of James Francis GANNON, Esquire, Exceptant (Two Cases).**

**ESTATE OF Margaret Sevier MORAN, Deceased.**

**ESTATE OF Margaret Sevier MORAN.**

**Appeal of James Francis GANNON, Esquire and Regina C. Bauer, Executrix of the Estate of Harold J. Conner, Deceased.**

Superior Court of Pennsylvania.

Argued March 31, 1993.

Filed Aug. 2, 1993.

Reargument Denied Oct. 6, 1993.

352

354

Joseph J. Carlin, Huntingdon Valley, for appellant.

Robert F. Blanck, Philadelphia, for Sevier, participating party.

Arthur S. Klein, King of Prussia, for Reice, participating party.

James J. Jandrisitz, Philadelphia, for Meyers, participating party.

Before TAMILIA, POPOVICH and CERCONE, JJ.

CERCONE, Judge.

This matter comprises two companion cases consisting of consolidated appeals taken by exceptant/appellant James Francis Gannon, Esquire from a decree entered by the Orphans' Court on February 19, 1992 and an additional appeal taken by exceptants/appellants James Gannon and Regina C. Bauer, from a decree entered by the Orphans' Court on June 30, 1992 confirming absolutely the Final Account and adjudication of February 24, 1992. For the reasons set forth below, we affirm the final decree confirming the account.

The factual and procedural history underlying the instant appeal is complex. Margaret Sevier Moran died testate on February 17, 1989. Her will, executed September 16, 1980,

contained codicils dated November 13, 1980 and April 5, 1987. All were admitted to probate by the Orphans' Court and Harold J. Conner, Esquire was appointed executor pursuant to the testatrix' nomination.[1]

Mrs. Moran, a widow on the date of her death, was survived by her only child, Margaret Sevier, identified in her mother's testamentary writings as "Sister Margaret Celine Sevier, S.S.J." The holographic April 5th codicil gives certain items of intangible personalty to Mrs. Moran's trustee to manage and distribute for the benefit of the daughter. The codicil specifically states that the purpose of the testamentary trust thereby created is to provide Mrs. Moran's daughter with financial resources in the event she should leave the sisterhood and return to secular life. Mrs. Moran also provided in the codicil that any remainder in the trust upon Ms. Sevier's death was to be distributed to the beneficiaries named in the September 16, 1980 document.

A testamentary writing dated November 22, 1987 was discovered after the previous will and its codicils had been admitted to probate. Under the November 1987 document, Mrs. Moran: (1) revoked all prior wills and codicils; (2) left the residue of her estate in trust for the benefit of Ms. Sevier; and (3) created a power in Ms. Sevier to designate the recipients for the trust corpus upon her own demise. The November 1987 writing explicitly stated that the purpose of the trust thereby created was to provide support for Ms. Sevier should she return to secular life. This writing also nominated Mr. Conner as executor and trustee, and indicated Mrs. Moran's wish that appellant Gannon would serve as successor personal representative if this should ever become necessary.

Seeking to have the November 22, 1987 writing admitted for probate, Ms. Sevier filed a caveat with the Orphans' Court

---

1. The testatrix' signature on the November 13, 1980 codicil was witnessed by appellant Regina C. Bauer, now personal representative for the deceased Mr. Conner, and by Joseph J. Carlin, present counsel for appellant Gannon. The holographic April 5, 1987 codicil was not witnessed.

from the Register of Wills' probate decree. This action was contested by both Mr. Conner and by Frances Reice Meyers, the decedent's niece and a beneficiary under the writings which the Register had already admitted to probate. On February 19, 1990, the first in what was to become a long series of meetings and hearings occurred before the Honorable Edmund S. Pawelec, Administrative Judge of the Philadelphia County Orphans' Court Division. Prior to the February 19th meeting, counsel for the various beneficiaries had held lengthy discussions on certain heavily disputed issues concerning Mrs. Moran's testamentary documents. In an effort to resolve these conflicts, and to conserve estate assets by settling questions of title, in late 1990 all of the ascertained beneficiaries, or their heirs-at-law, signified their willingness to enter into a family settlement agreement.

For reasons not clear in the certified record, certain pressing estate business remained unfinished. Consequently, Ms. Sevier filed a petition on October 19, 1990 to compel the filing of an account. Judge Pawelec ordered the executor to comply with this request, and a First and Final Account was filed. However, Ms. Sevier lodged several objections to the executor's account. An Amended First and Final Account was duly filed on April 26, 1991. Unfortunately, the executor died on July 23 of that year leaving numerous estate matters unsettled.[2] These questions were discussed at several meetings and hearings before Judge Pawelec, the auditing judge. The record indicates that it was understood among the parties in interest that counsel for Ms. Sevier, the principal residuary beneficiary and testatrix' only surviving child, would handle all open matters if the family settlement agreement were to be approved.

The parties in interest ultimately reached an agreement providing, *inter alia,* that: 7.05% of Mrs. Moran's estate should be paid to the Estate of Walter R. Reice; Frances Reice Meyers, decedent's niece, should receive 8.33% of the

2. Among other problems, the federal estate taxes, Pennsylvania inheritance tax, and Mrs. Moran's final income taxes remained open and unpaid at the time of Mr. Conner's demise.

total; decedent's daughter, Ms. Sevier, should receive the remainder of the estate, outright and free of trust; and Ms. Sevier would withdraw her appeal concerning the grant of probate. The auditing judge thereafter appointed Charles A. Fitzpatrick, Esquire, as guardian ad litem to represent all minors having a possible interest in Mrs. Moran's estate and as trustee ad litem for unborn and unascertained persons. The report eventually filed by Mr. Fitzpatrick recommended that the auditing judge approve the proposed agreement.

Judge Pawelec accepted this recommendation and ruled that the family settlement agreement calling for the termination of the trust should be approved, and that the Sevier Trust created by the April 5, 1987 codicil should be terminated if no purpose of the testatrix would be served by requiring its continuance. A hearing was conducted on the question of Ms. Sevier's vocational status. The auditing judge ultimately concluded that, whatever her precise status under canon law at the time of her mother's death, Ms. Sevier had definitely withdrawn from the Congregation of the Sisters of Saint Joseph and had returned to the secular world by the end of 1991. The auditing judge determined that the wishes of the testatrix would not be furthered by continuing the trust. He therefore approved the family settlement agreement and ordered distribution of the estate assets pursuant to its terms.

Shortly after Mr. Conner's death, the testatrix' designated successor personal representative, appellant Gannon, had presented a petition to the Register of Wills requesting appointment as administrator d.b.n.c.t.a. for the Estate of Moran. In his brief, Mr. Gannon alleges that the Register of Wills declined to issue letters of administration upon the oral instructions of Judge Pawelec. Mr. Gannon also avers that Judge Pawelec directed the Register of Wills to refuse appeal papers on the matter. The certified record shows that appellant Gannon pursued the issue by filing a formal petition with the Orphans' Court seeking letters of administration.

According to Mr. Gannon, Judge Pawelec denied his petition for letters of administration d.b.n.c.t.a. on November 19, 1991. The certified record clearly indicates that the converse is true:

Judge Pawelec *granted* appellant Gannon's request. *See* Orphans' Court Decree of 11/19/91. However, this decree does contain a proviso directing the Register of Wills to act on the matter only after notice of the proposed appointment was given to counsel of record for Mrs. Moran's beneficiaries. It appears that Mr. Gannon interpreted this notice requirement as an adverse determination since he filed exceptions to the decree. These exceptions were dismissed as moot by a decree docketed February 19, 1992.

The auditing judge subsequently acted on February 24, 1992 to confirm the First and Final Account previously filed by the deceased executor, Harold J. Conner. Exceptions to the adjudication confirming the audit were lodged on March 12, 1992 by Mr. Gannon and by Regina C. Bauer, the executrix of Mr. Conner's estate. On that same date, a praecipe was filed to place the exceptions to the February 24th decree on the argument list for April 15, 1992.

On March 18th of 1992, appellant Gannon lodged two notices of appeal with the Superior Court from the decree of February 19th dismissing his exceptions.[3] For the purpose of maintaining the status quo and preserving the estate, Judge Pawelec subsequently entered various orders permitting certain of decedent's assets to be used to satisfy pressing estate debts, such as the federal estate tax deficiency. On June 30, 1992, the exceptions filed by appellant and by Ms. Bauer to the February 24th decree were dismissed by a four judge *en banc* panel of the Orphans' Court. The same *en banc* panel, with one member dissenting, confirmed absolutely the February 24th adjudication by Judge Pawelec. *See* Opinion sur Exceptions to Adjudication docketed June 30, 1992. Reconsideration was requested, but was denied on July 28, 1992 by an *en banc* panel of the Orphans' Court. A notice of appeal to the Superior Court from the final confirmation of account was filed July 29, 1992 by James Francis Gannon and Regina C.

3. These appeals were docketed at Nos. 1146 and 1147 Philadelphia 1992.

360

Bauer.[4]

▮ Before addressing the claims of the parties, we must first determine whether we may exercise jurisdiction over all three appeals. *See Estate of Meininger,* 367 Pa.Super. 105, 107, 532 A.2d 475, 476 (1987) (Superior Court may raise propriety of jurisdiction *sua sponte*). It is axiomatic that an appeal will lie only from a final order unless otherwise permitted by statute or rule. *Fried v. Fried,* 509 Pa. 89, 93, 501 A.2d 211, 213 (1985). When the case concerns a decedent's estate, finality is not conferred until confirmation of the Final Account. *Estate of Meininger,* 367 Pa.Super. at 107, 532 A.2d at 477. *But see* Pa.R.A.P., Rule 342, 42 Pa.C.S.A. (appeals as of right from orders of distribution *upon certification* by the Orphans' Court). Although the appeals lodged with this court at 1146 and 1147 Philadelphia 1992 were docketed before the Orphans' Court *en banc* had confirmed absolutely the First and Final Account, they were filed after confirmation of the account by the auditing judge. Since a final decree has actually been entered in the case, we shall treat all the appeals as perfected. *See id.,* Rules 301 (Requisites for an Appealable Order), 905 (Filing of Notice of Appeal), and *Notes* thereto. In the interests of both justice and judicial economy, we shall "regard as done that which ought to have been done" procedurally and shall review the merits of all issues presented. *See McCormick by McCormick v. Northeastern Bank,* 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n. 1 (1989).

▮ As a second preliminary to resolution of the substantive claims raised by the appellants, we must determine whether the appellants possess standing to appeal from the Orphans' Court decree. Both appellee and the *en banc* panel below have raised this question. Pennsylvania law is well settled that, merely by virtue of his or her official capacity, an executor cannot appeal from a decree of distribution entered by the court to which he or she must account so long as that decree does not surcharge the executor or make distribution

4. The appeal from the final adjudication was docketed at No. 2668 Philadelphia 1992 and has not been consolidated with Mr. Gannon's appeals at 1146 and 1147 Philadelphia 1992.

of an amount larger than the total of the estate's assets. *In re Hand's Estate,* 288 Pa. 569, 570, 136 A. 864, 864 (1927); *In re Wick's Estate,* 50 Pa.Super. 614 (1912). An executor who has not been surcharged has no standing to except to an adjudication of the auditing judge regarding payment of claims against an estate unless the executor is also a residuary beneficiary of the estate. *In re Follansbee's Estate,* 161 Pa.Super. 31, 40, 53 A.2d 864, 869 (1947). No allegation has been raised that either appellant was surcharged or has a beneficial interest in Mrs. Moran's estate. Furthermore, the certified record contains no indication that the Orphans' Court has ordered a distribution of an amount larger than the total of the estate assets. We therefore conclude that neither Mr. Gannon's capacity as unconfirmed contingent executor nor Ms. Bauer's status as executor for Mr. Conner confers standing to pursue these appeals. However, this answer does not end our inquiry because Mr. Gannon also claims to act as unconfirmed contingent trustee for the "Sevier Trust" discussed *infra.*

A trustee may only challenge a ruling of the Orphans' Court if he or she is an "aggrieved party" within the meaning of Pennsylvania law. *In re Musser's Estate,* 341 Pa. 1, 6, 17 A.2d 411, 414 (1941). A trustee's interest in fees to be earned is not an interest protected by our law in an action against the beneficiaries of the trust. *Id.* at 6–7, 17 A.2d at 14. Thus, loss of future compensation upon termination of a trust provides no standing to the trustee. *Id.* Contrary to the assertions made to the Orphans' Court by counsel for Mr. Gannon,[5] in the absence of some special trust purpose,[6] neither "the trustee's abstract interest in seeing the testator's intent carried out, nor his concrete interest in his fees" can confer the status of "aggrieved party." *Id.* A fiduciary does have

5. *See, e.g.,* Statement from May 1991 Audit List; Statement from September 1991 Audit List.

6. The settlor's purpose is discussed *infra* in conjunction with our resolution of the appeal raised at 2668 Philadelphia 1992. To repeat that material here is unnecessary. However, for the sake of factual clarification at this point, we note our agreement with the conclusion reached by both the auditing judge and the Orphans' Court *en banc* that no special trust purpose of the settlor remains to be carried out.

standing to prosecute an appeal from a decree construing the relative rights of beneficiaries if any are either unascertained or incompetent to act *sui juris. Id.* These appeals facially purport to determine the rights of residuary beneficiaries and remaindermen who are minors, or unascertained or unborn persons. We therefore conclude that Mr. Gannon, as unconfirmed contingent trustee, arguably has at least colorable standing in the instant case to pursue an appeal.

## Consolidated Appeals filed at 1146 and 1146 Philadelphia 1992

These appeals raise two questions: (1) whether an auditing judge has jurisdiction to require that a contingent personal representative nominated by a testatrix must provide actual notice of his proposed appointment as successor executor and trustee to counsel of record for the beneficiaries of a decedent's estate when the primary executor/trustee dies during estate administration; and (2) whether an auditing judge, after the death of the primary personal representative, but before appointment of his successor, has jurisdiction to enter orders directing partial distribution of estate assets to settle pressing estate debts. We must consider these claims in light of the standard governing review of an Orphans' Court decree which requires us to accord the findings of an Orphans' Court judge the same weight and effect as a jury verdict. *In re Benson,* 419 Pa.Super. 582, 585, 615 A.2d 792, 793 (1992). We will not disturb those findings absent manifest error. *Id.* As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. *Id.* "The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion." *In re Estate of Kessler,* 419 Pa.Super. 142, 146, 615 A.2d 65, 67 (1992), *allocatur denied,* 533 Pa. 660, 625 A.2d 1193 (1993).

■ The first issue before us is Mr. Gannon's contention that the auditing judge erred by requiring him to provide actual notice to counsel of record for Mrs. Moran's beneficiaries concerning the pending appointment of a successor personal representative in the case. The grant of letters of administration to a successor personal representative is controlled by section 3159 of the Probate Estates and Fiduciaries Code (the "PEF Code"):

> When an entire vacancy occurs in the office of personal representative before administration is completed, the register shall grant . . ., in the case of testacy, letters de bonis non cum testamento annexo, to the *person or persons entitled* thereto.

20 Pa.C.S.A. § 3159 (emphasis added). This provision does not stand alone, however, but must be construed in *pari materia* with the definition of "persons entitled" as set forth in section 3155 of the PEF Code. *See id.,* Official Comment—1949.

> Letters of administration shall be granted by the register, in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:
>
> (1) Those entitled to the residuary estate under the will.
>
> (2) The surviving spouse.
>
> (3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.
>
> (4) The principal creditors of the decedent at the time of his death.
>
> (5) Other fit persons. . . .

*Id.* § 3155(b). Nothing in these statutory provisions addresses the question of whether actual notice should be provided to a decedent's beneficiaries. However, in December of 1989, this court handed down a decision on an estate matter intended to alert the Legislature, the Pennsylvania Supreme Court and all local rules committees to the inappropriate ease with

which letters of administration were obtainable in Philadelphia County. *See Brokans v. Melnick,* 391 Pa.Super. 21, 30 n. 11, 569 A.2d 1373, 1377 n. 11 (1989), *allocatur denied,* 526 Pa. 626, 584 A.2d 310 (1990). *Brokans* explicitly criticized the Register of Wills of Philadelphia County for granting letters of administration to an attorney purporting to represent a decedent's estate without requiring actual notice of the appointment to the decedent's next of kin. *Id.* at 31, 569 A.3d at 1377–78. In light of *Brokans,* it is entirely understandable that both the Register of Wills and the Administrative Judge of the Orphans Court Division of Philadelphia County chose to pursue a cautious approach to Mr. Gannon's appointment as administrator d.b.n.c.t.a. in the instant case.

Appellant Gannon cannot fairly be characterized as either a "complete stranger" or an "officious intermeddler," as was the case with the attorney appointed to administer the estate in *Brokans.* We nevertheless find no basis in our law which supports Mr. Gannon's unwarranted belief that he was imbued with an absolute and incontrovertible right to be automatically appointed administrator d.b.n.c.t.a. to the estate of Mrs. Moran. The record indicates that the Register of Wills and the auditing judge each possessed actual knowledge that this particular estate was the subject of a complex will contest and that Mrs. Moran's beneficiaries had retained counsel who were of record in the case. Furthermore, although the beneficiaries disagreed on the question of asset distribution, all were deeply aggrieved that the administration of the estate had descended into chaos during the latter part of Mr. Conner's tenure as executor. Under these circumstances, we decline to find either abuse of discretion or error of law in Judge Pawelec's sensible requirement that appellant Gannon must provide Mrs. Moran's beneficiaries with actual notice of his pending appointment as her successor personal representative.

As to Mr. Gannon's claim that the auditing judge erred in directing a "partial distribution" of estate assets prior to the appointment of a successor personal representative, we find that the *en banc* panel of the Orphans' Court properly

resolved this question in a memorandum opinion, penned by the Honorable Joseph C. Bruno, which held as follows:

This matter is before the Court *en banc* upon exceptions filed by James Francis Gannon to a Decree by Pawelec, A.J., dated November 21, 1991, in which Janney Montgomery Scott, Inc., was directed to issue, from funds it holds in the name of the estate, a check in the amount of $7,263.28 payable to G.M.A.C. and deliver the check to Robert F. Blanck, Esquire, for transmittal. The purpose of the Decree was to enable the late mortgage payments to be made on a condominium, known as Unit 9B West, 210 Locust Street, and thereby prevent the mortgagee from bringing a foreclosure proceeding.

We are hard-pressed to understand Mr. Gannon's reasons for filing exceptions to a Decree the effect of which is to preserve an asset of this estate.

Memorandum Opinion sur Exceptions to Decree of Pawelec, A.J., dated November 21, 1991 filed February 19, 1992.

After carefully scrutinizing the certified record as well as the parties' briefs, we find ourselves unable to disagree with the sentiments expressed by decedent's daughter, appellee Margaret Sevier, who complains that Mr. Gannon's actions in refusing to provide notice to counsel of record in this case and in appealing an order calculated to preserve estate assets has unfairly and unjustifiably complicated an already complex matter. As Ms. Sevier correctly notes, appellant Gannon is a stakeholder and not a party in interest to this matter.[7] Yet his appeals have successfully prevented the natural recipients of Mrs. Moran's bounty from receiving the benefits the decedent ardently desired to confer. The beneficiaries are faced with a myriad of unresolved estate problems, including both unpaid taxes accruing interest and penalties and overpaid taxes for which refunds were never timely requested. In view

---

7. "The executor is merely a holder of the estate's assets for the purposes of administration and distribution and is not adversely affected by a decision of the orphans' court directing the distribution of those assets." *Estate of Karahuta,* 481 Pa. 512, 514, 393 A.2d 22, 23 (1978) (quoting *In re Estate of Hain,* 464 Pa. 349, 353, 346 A.2d 774, 776 (1975)).

of his avowed interest in effectuating the wishes of the decedent, we find it anomalous that appellant Gannon balked at complying with a simple and proper ruling by the Orphans' Court that Mrs. Moran's beneficiaries were entitled to actual notice that a new administrator was about to be appointed to handle the estate. However, we are completely mystified by appellant Gannon's objection to the auditing judge's timely intervention to prevent a costly mortgage foreclosure action.

### Appeal at 2668 Philadelphia 1992

This appeal was jointly initiated by Mr. Gannon and by Regina C. Bauer in her capacity as executrix of the estate of Harold J. Conner, the deceased executor for Mrs. Moran's estate. The appeal raises two issues: (1) whether the Orphans' Court acted properly in approving the family settlement agreement; and (2) whether the auditing judge erred by requiring the executrix for Mrs. Moran's deceased executor to perform certain actions on behalf of Mrs. Moran's estate. We see no justification whatsoever for Ms. Bauer's participation in this appeal as she is not an "aggrieved party" within the meaning of our law. *See In re Musser's Estate, supra.* Ms. Bauer's only duty to Mrs. Moran's estate is to protect its assets pending delivery to the persons entitled to receive them. 20 Pa.C.S.A. § 3324. The statute compels her to obey the orders of the Orphans' Court concerning distribution and transfers of estate assets and thus relieves her of liability for compliance with such orders. *See id.* However, in light of the fact that Mr. Gannon is a party to this appeal, we shall address the substantive claims raised in order to promote a speedy and just resolution of this litigation, insofar as that goal is possible at this stage of the proceedings.

The thrust of appellants' first claim of error is that Pennsylvania law will not permit the Orphans' Court to accept a family settlement agreement which effectively destroys a testamentary discretionary income trust. In *Estate of Weeks*, 485 Pa. 329, 332, 402 A.2d 657, 658 (1979), the Pennsylvania Supreme Court endorsed the view expressed by the Restatement (Second) of Trusts on the question of whether a trust may be terminated without the consent of the settlor. Al-

though not explicitly cited by the Orphans' Court, the rationale espoused in this case by both the auditing judge and by the *en banc* panel adheres to the following Restatement provisions:

### § 337. Consent of Beneficiaries

(1) Except as stated in Subsection (2), if all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination of the trust.

(2) If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination.

Restatement (Second) of Trusts § 337 (1959). Certain of the Comments following section 337 are particularly instructive in the instant case.

*a. General rule.* The beneficiaries of a trust, if all consent and none is under an incapacity, can compel its termination if the continuance of the trust is not necessary to carry out a material purpose of the trust, although the period fixed by the terms of the trust for its duration has not expired. On the other hand, even though they all consent, they cannot compel the termination of the trust if its continuance is necessary to carry out a material purpose of the trust.

*b. Interest of trustee.* If all of the beneficiaries of a trust wish to terminate it, the trust will not be continued merely in order to enable the trustee to obtain further compensation. The trustee as such is not a beneficiary of the trust....

. . . .

*e. Evidence as to the purposes of the trust.* If the purposes for which the trust is created are expressed in the instrument by which the trust is created, a different purpose cannot be shown by extrinsic evidence. If, however, the purposes are not expressed in the instrument, extrinsic evidence of the surrounding circumstances to aid in the construction of the instrument is admissible in order to determine the purposes of the trust.

*f.* *Successive* *beneficiaries—Purposes* *accomplished.*
The mere fact that the settlor has created a trust for
successive beneficiaries does not of itself indicate that it was
a material purpose of the trust to deprive the beneficiaries
of the management of the trust property for the period of
the trust. . . .

*Id.,* comments a, b, e and f. Plainly, the problem here is to
ascertain whether the Sevier Trust must continue in order to
carry out a "material purpose of the trust" and then determine
whether all beneficiaries have consented to the trust's termi-
nation. We shall first address the question of whether contin-
uance of the trust was necessary in order to carry out a
material purpose of Mrs. Moran.

The Supreme Court of Pennsylvania has indicated
that courts may not infer that it was a material purpose of the
settlor to deprive the beneficiaries of the management of the
trust property in the absence of evidence supporting such a
conclusion. *Estate of Weeks,* 485 Pa. at 333, 402 A.2d at 658–
59. *Accord* Restatement (Second) of Trusts § 337, comment f,
*supra.* Moreover, our Supreme Court has ruled that termi-
nation of a testamentary trust is proper when it appears that
the trustee has no function except merely to apply all the
proceeds of the trust corpus to the personal use of the
beneficiary as she might require it. *In re Wood's Estate,* 261
Pa. 480, 482–83, 104 A. 673, 673 (1918). A spendthrift trust
clearly cannot be terminated simply by obtaining the consent
of the beneficiary whom the settlor thereby sought to protect.
*See Bosler's Estate,* 378 Pa. 333, 107 A.2d 443 (1954). Howev-
er, continuance of a trust is not required for the mere pay-
ment of income where there is no limitation over either the
income or the principal of the estate to any person, where
there are no other estates or interests to be preserved, and
where no spendthrift trust has been established. *In re*
*Wood's Estate,* 261 Pa. at 482–83, 104 A. at 673. The consent
of the trustees is not required to terminate a trust. *In re*
*Musser's Estate,* 341 Pa. at 7, 17 A.2d at 414.

The testamentary document admitted to probate in the
instant case contains the following pertinent provisions:

*Sevier Trust*—I give and bequeath all stocks, Bonds, certificates of deposit and all other intangible personal property to my daughter Sister Margaret Celine Sevier S.S.J.—My trustee shall hold, manage and invest the principal and any accumulation of income and in his discretion he may distrubet [sic] the income to Sr. Margaret Celine Sevier, S.S.J. The Trustee is authorized in his own discretion to invade principal of trust for her schooling travel and personal use.

The purpose of the trust is to provide her with resources in the event she should return to secular life style either voluntarily or involuntarily.

If the trust beneficiary dies the remaining funds shall pass to the beneficiaries named in the September 16, 1980 Codicil.[8]

If my brother, Walter F. Reice, dies his share shall pass to my nephew, Donald F. Reice and his wife Joan Reice & my niece Agnes Reice Burgess BURGESS [sic] and my sister Sr. Marie Denise S.S.J.

s/Margaret Sevier Moran

Codicil dated April 5, 1987.[9]

 The polestar in construing every trust is the settlor's intent. *In re Benson*, 419 Pa.Super. at 588–89, 615 A.2d at 794–95. It is well established that the writing itself must be considered the best and controlling evidence of that question. *Id.* The testamentary writing actually admitted to probate clearly expresses Mrs. Moran's intent: the trustee is to husband the trust property and expend it, in his discretion, on behalf of the settlor's daughter while she remains in the

**8.** This testamentary document names Walter F. Reice, Agnes Reice Burgess, Frances Reice Meyers, Sr. Marie Denise, S.S.J., and Sr. Margaret Celine Sevier as potential beneficiaries. Although Mrs. Moran's husband was designated as residuary beneficiary, Mr. Moran predeceased his wife.

**9.** An unsigned codicil dated April 6, 1987 follows the April 5th codicil. The latter writing names Sr. Marie Denise, S.S.J., Donald F. Reice and his wife, Joan Reice as residuary beneficiaries upon the demise of Mrs. Moran's daughter. The April 6, 1987 document was not admitted to probate.

religious life; in the event of the daughter's return to secular life, the trust property is to "provide her with resources." *See* Codicil dated April 5, 1987, *supra.* Although remaindermen have been designated to receive any trust corpus which happens to be in existence at the time of Ms. Sevier's demise, the settlor has provided no directive that the trustee is to conserve assets in favor of the remaindermen's interest.

Notably absent from the codicil is any language which can be deemed to create either a spendthrift trust or a traditional support trust. Indeed, there is no limitation over either the income or the principal of the estate should Mrs. Moran's daughter leave the Congregation of the Sisters of Saint Joseph. There is simply no indication that the settlor intended to deprive Ms. Sevier of management of the trust property should she leave the religious life. According to the clear and unambiguous language of the instrument creating the trust, once Mrs. Moran's daughter has returned to secular life, the only purpose of the trust is to "provide resources," *i.e.,* pay funds to the beneficiary.

Although Mr. Gannon vociferously protests the point, the certified record in this case unequivocally demonstrates that Ms. Sevier has returned to secular life.[10] Under the explicit terms of the testamentary trust document admitted to probate, the trustee now has no function except to apply the proceeds of the trust on behalf of the settlor's daughter. We therefore agree with the Orphans' Court *en banc* that there is no material purpose of the settlor to be served by continuing this trust.

However, we must still resolve the question of whether all the beneficiaries of the trust consented to its termination.

**10.** Judge Pawelec premised his factual finding in this matter upon his review of an Indult of Definitive Departure issued at the Vatican on November 14, 1991 by His Holiness Pope John Paul II. The indult was signed and accepted in the United States by Ms. Sevier on December 7, 1991. *See* Adjudication of Pawelec, A.J. filed February 24, 1992 at 10. The certified record contains a Latin copy of the indult, an English translation of it, and a copy of Ms. Sevier's acceptance. We conclude that the certified record adequately supports Judge Pawelec's factual finding.

Mrs. Moran was preceded in death by her brother, Walter F. Reice. His interest, if any, in Mrs. Moran's estate was represented by his heirs-at-law as defined by the PEF Code.[11] At the time the family settlement agreement was executed, the vested remaindermen were all adults acting *sui juris* as were the heirs-at-law to Walter F. Reice. These remaindermen and possible beneficiaries all signed the family settlement agreement.[12]

As we previously explained, Judge Pawelec appointed Charles Fitzpatrick as guardian ad litem to represent any minor who might have a possible interest in Mrs. Moran's estate. Mr. Fitzpatrick was also appointed trustee ad litem to represent all unborn and unascertained persons having such an interest. The report filed by the Ad Litem on August 6, 1991 is a comprehensive document which thoughtfully addresses the problems raised by the instant case. Mr. Fitzpatrick concluded that under the totality of the circumstances presented by this case, the proposed family settlement agreement would not compromise the actual or potential interests of the minors or of any unborn or unascertained persons. The Ad Litem therefore recommended approval of the agreement.[13]

---

**11.** The auditing judge noted that no personal representative had been appointed or qualified to act on behalf of the estate of Mr. Reice. *See* Adjudication of February 24, 1992 by Pawelec, J.

**12.** The certified record shows that the signatories to this agreement consisted of Margaret Sevier, Barbara Anderson, Joan Hadry, Elizabeth Gibson, Agnes Reice Burgess, Frances Reice Myers, Sr. Marie Denise, S.S.J., Donald F. Reice and Joan Reice.

**13.** *Inter alia*, the Ad Litem determined that under the will and codicils probated, his wards had only remote and contingent interests with little likelihood of vesting. Moreover, he determined that if the November 22, 1987 testamentary document were to be accepted for probate, his wards would have no interest in the matter whatsoever. *See* Ad Litem's Report docketed August 6, 1991 at 7. After thoroughly analyzing the probable factual scenarios and their possible results, the Ad Litem concluded that prolonging litigation would not serve the best interests of his wards. *See id.* at 11.

We are cognizant of the fact that the November 22, 1987 writing which forms part of the basis of the Ad Litem's recommendation is considered by the appellants to be a forgery. We are also aware that Ms. Sevier deeply resents this allegation. However, the question of whether this document actually constitutes Mrs. Moran's last will and

■ Although appellants have specifically challenged the validity of the beneficiaries' consent on the grounds that the Ad Litem never affixed his signature to the family settlement agreement, we do not view this fact as a fatal flaw. The auditing judge explicitly adopted the Ad Litem's report and annexed it to the adjudication of February 24, 1992 which was confirmed absolutely by the Orphans' Court *en banc*. We find this sufficient to overcome any technical defect of form which might otherwise result from the Ad Litem's failure to actually sign the agreement.

■ Appellants also contend that termination of the trust was improper because the minors and unascertained remaindermen were under an incapacity and therefore could not validly consent to the proposed family settlement agreement nor could the Ad Litem consent on their behalf. Although we agree with the legal premise underlying this conclusion, we cannot agree that it applies in this case because there were no remaindermen under an incapacity when the Orphans' Court actually construed the testamentary trust document and accepted the family settlement agreement. At that time, the plain terms of the Sevier Trust created neither a class gift nor a remainder interest subject to a condition precedent. It therefore provided no possibility of unborn or unascertained remainder interests. By definition, all the remaindermen named in the testamentary writing creating the Sevier Trust are indefeasibly vested because they are certain to acquire the right to present possession at some time in the future (*i.e.*, upon the demise of the lifetime beneficiary). *See generally* 2 Restatement of Property §§ 156–157 (1936) (cited with approval by *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 564, 20 A.2d 768, 771 (1941) and *Overbrook Heights Building*

testament is not presently before us. Our concern is limited solely to whether the Ad Litem's Report serves as a proper basis for the Orphans' Court's conclusions regarding termination of the trust. The Ad Litem properly considered the potential import of the November 22, 1987 writing as well as the probable impact of the litigation which would certainly ensue if appellee refused to withdraw her caveat to the decree granting probate to the prior writings. Thus we find neither error of law or abuse of discretion by the Orphans' Court in relying upon the Ad Litem's Report. *See In re Benson, supra.*

*and Loan Association v. Wilson,* 333 Pa. 449, 456, 5 A.2d 529, 531 (1939)).[14] If an indefeasibly vested remainderman dies before his future interest can become a present possessory entitlement, that interest passes to *his or her* grantees, distributees or devisees and not by operation of the trust document which created the interest. *Id.* § 157(a), comment f. The logical conclusion from this fact is that an indefeasibly vested remainderman who is *sui juris* may enter into contracts which bind his or her successors in interest. Thus, our concern is solely with the legal capacity of the indefeasibly vested remaindermen, and not with the legal status of their grantees, distributees, devisees and heirs-at-law. In the instant case, as we have reiterated several times, the remaindermen are all adults acting *sui juris.*

However, even if this were not the case, appellants still have no grounds to prevent the termination of the Sevier trust. The Orphans' Court is empowered to direct or permit a trustee to deviate from *any* trust term if, owing to circumstances not known to the settlor and not anticipated by him or her, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. Restatement (Second) of Trusts § 167, *supra. Accord In re Essig's Estate,* 167 Pa.Super. 66, 69 n. 3, 74 A.2d 787, 789 n. 3 (1950) (citing § 167 with approval); *Lehigh University v. Hower,* 159 Pa.Super. 84, 93, 46 A.2d 516, 521 (1946) (relying on § 167). More specifically, the court may direct or permit complete *termination* of a trust if, owing to circumstances not known and anticipated by the settlor, continuance of that trust would defeat or substantially impair the accomplishment of the purposes for which it was established. *Id.* § 336 (cited with approval by *Estate of Day,* 455 Pa. 610, 614, 317 A.2d 648, 650 (1974)). Section 336 applies even to situations where one or more of the beneficiaries is under an incapacity or does not consent to the termination of the trust. *Id.* comment c.

14. For a specific discussion concerning the present identification of remaindermen even when the limitation is in the form of a class gift, see *id.* § 157(a), comment i.

 In Pennsylvania, the Legislature has considered the effect of trust termination on the interests of unascertained heirs.

## § 6102. Termination of trusts

**(a) Failure of original purpose.**—The court having jurisdiction of a trust heretofore or hereafter created, regardless of any spendthrift or similar provision therein, in its discretion may terminate such trust in whole or in part, or make an allowance from principal to one or more beneficiaries provided the court after hearing is satisfied that the original purpose of the conveyor cannot be carried out or is impractical of fulfillment and that the termination, partial termination, or allowance more nearly approximates the intention of the conveyor, and notice is given to all parties in interest or to their duly appointed fiduciaries.

20 Pa.C.S.A. § 6102(a). Consent of all parties in interest is not a pre-requisite to termination under this provision; the Orphans' Court may terminate a trust upon notice and a hearing. *See Estate of Day*, 455 Pa. at 615, 317 A.2d at 651.

In the instant case, a guardian ad litem was appointed to represent the interests of beneficiaries under an incapacity and notice was unquestionably provided to all parties. Indeed, the auditing judge appointed the Ad Litem at Mr. Gannon's request solely to determine whether termination of the trust was proper. Several hearings were held which touched on the question of whether continuance of the trust would defeat or substantially impair the purpose of the settlor in creating that trust.

In particular, this issue was debated before Judge Pawelec on September 9, 1991 in the presence of the Ad Litem as well as counsel for all parties.[15] At this time, counsel for appellee informed the court that his client was nearly destitute. Evidence was presented at this hearing that Ms. Sevier, a woman

15. The certified record contains "Appearance of Counsel" forms for this hearing bearing the signatures of record counsel for all parties, including the Ad Litem and a representative of the Commonwealth of Pennsylvania who appeared to claim unpaid inheritance taxes.

now in her early seventies, is attempting to support herself through a part-time job with the City of Philadelphia. However, because of the manner in which the City functions, she receives no income from this labor between the months of June and December. Owing to the bona fide family dispute and to Mr. Gannon's appeals, the settlor's daughter lives in near poverty, subject to the constant fear that her domicile will be lost to her through foreclosure. It is inconceivable that the testatrix intended this result for her daughter or even considered it to be a possibility in light of the extensive resources left for Ms. Sevier's use.

Testimony was presented at the September 9th hearing that the deceased executor and his counsel had already collected in excess of $114,000 in fees and commissions from Mrs. Moran's estate.[16] By way of contrast, the primary estate beneficiary had received less than $35,000 during the entire four years since her mother's death.[17] After remarking that he suspected the true reason Mr. Gannon wished to continue the trust was to maintain payment of commission fees, the auditing judge took the matter under advisement. *See* Statement from September 1991 Audit List at 1–10. Judge Pawelec subsequently concluded that no purpose of the settlor could be served by continuing the trust. Opinion of February 24, 1992 at 9.

Mrs. Moran's assets were substantial but not limitless. We cannot believe that she either anticipated or intended that the corpus of the Sevier Trust should be eaten up by lawyers' fees, trustee's commissions and other costs associated with the protracted litigation guaranteed to ensue should the beneficiaries under the multiple testamentary documents be prevented from amicably settling the will contest. Termination of the Sevier Trust is an essential condition for resolu-

16. The record does not explicitly address the sums, if any, collected by Mr. Gannon.

17. A simple mathematical calculation discloses that although the estate of Mrs. Moran has provided the primary beneficiary with an income of only $8,750 per year, the attorneys have collected approximately $28,500 per year while neglecting such obvious necessities as the timely filing of tax returns.

tion of these bona fide disputes since resources are otherwise unavailable to satisfy the competing claims. The staggering expenses heretofore incurred, as well as the excessive delay in settling this estate, have already worked a substantial detriment to all of Mrs. Moran's beneficiaries. It was the clear intent of the settlor that upon leaving the religious life, her daughter should enjoy the resources of the trust corpus untrammeled by restrictions. Contrary to appellants' assertions, this is not a spendthrift trust. Continuation of the trust under these conditions does not promote the settlor's expressed purpose; it actively *frustrates* her intent. Under the specific facts presented by this case, we agree with the auditing judge and with the Orphans' Court *en banc* that termination of the Sevier Trust was proper.[18]

 The final claim raised by appellants has been phrased in the following manner:

> May the Auditing Judge impose the obligation to receive, collect and distribute the assets of the Estate of Margaret Sevier Moran on the personal representative of the deceased executor's estate, Regina C. Bauer, based on an Adjudication that does not determine the interest of the federal or state government for death taxes, nor the interest of the City of Philadelphia for predeath taxes nor the interest of the City, State or Federal governments for tax on fiduciary income received by the estate.

The auditing judge ruled in the affirmative, and we agree. The answer to this challenge has been provided by our Legislature and is set forth, in meticulous detail, in the PEF Code:

> The personal representative of the estate of a deceased fiduciary or the guardian of an adjudged incompetent fiduciary by reason of his position shall not succeed to the administration of, or have the right to possess, any asset of an estate which was being administered by the deceased or

18. *See also* Annot., 29 A.L.R.3d § 8 (1970) (discussing general validity of family settlement agreements which effectively set aside or remove from probate otherwise valid wills thereby preventing the intended testamentary disposition and permitting the estate to pass under the laws of intestacy or by agreement of the parties).

incompetent fiduciary, except to protect it pending its delivery to the person entitled to it. The account of the deceased or incompetent fiduciary may be filed by the fiduciary of his estate and it shall be filed if the court shall so direct. *The court may direct the fiduciary of a deceased or incompetent fiduciary to make the distribution and to make the transfers and assignments necessary to carry into effect a decree of distribution.*

20 Pa.C.S.A. § 3324 (emphasis added). Since the law of Pennsylvania is so clear, we see no need to provide additional commentary to this statute.[19]

 As a final point, we must consider a generalized complaint made by appellee in her briefs concerning all the above appeals: that appellants possess no right to stall the settlement of this estate. We agree with appellee that litigants are not permitted to behave in a dilatory, obdurate or vexatious manner. *See* Pa.R.A.P., Rule 2744, 42 Pa.C.S.A. This court has previously explained that multiple appeals taken for the purpose of delay, which focus on issues that have already been resolved, or which present arguments running counter to well settled rules of law will be deemed "frivolous" and thus may provide a basis for the imposition of sanctions. *See Murphy v. Murphy*, 410 Pa.Super. 146, 158–59, 599 A.2d 647, 653–54 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992) (discussing remedies available to a victim of unduly protracted litigation). However, as appellee has only impliedly requested the courts to impose sanctions, resolution of this issue must await future events.[20] We cannot address the question further at this time.

The final decree of the Orphans' Court is affirmed.

**19.** For purposes of factual clarification, however, we note that the auditing judge did not leave open any questions concerning tax liability for the estate of Mrs. Moran. The tax issues were fully resolved by the final adjudication and impose no liability on the estate of the deceased executor.

**20.** No surcharge had been requested at the time these appeals were filed, nor had appellee sought other sanctions before the Orphans' Court.