## Warner's Estate.

*Husband and wife—Antenuptial agreement.*

Where a man possessed of a competence, by an antenuptial agreement, cuts off the woman he is about to marry without anything for her support from his estate after his death, the presumption is that he designedly concealed from her the value of his estate at the time the agreement was executed.

*Executors and administrators—Right to administer—Antagonism between parties—Appointment of disinterested person.*

The register of wills is not bound to grant letters of administration to the widow of a decedent.

Where antagonisms and differences exist between the widow and sons of the decedent by a former marriage, the register should appoint a disinterested fit person, natural or artificial, at his discretion, if the parties themselves cannot agree upon an administrator.

Argued Nov. 4, 1903. Appeal, No. 129, Oct. T., 1903, by R. E. Warner, and Lawrence Warner, from decree of O. C. Allegheny Co., Jan. T., 1903, No. 206, revoking letters of administration in estate of E. S. Warner, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Petition to revoke letters of administration.

From the record it appeared that on July 6, 1897, Dr. E. S.

Warner and Mary Sands, being in contemplation of marriage, executed an agreement in writing, by which they relinquished all marital rights in each other's estates.

The auditing judge, MILLER, J., found other facts as follows:

On August 11, 1897, an addition to the foregoing agreement was made and duly executed by both parties, wherein it is stated that the decedent owned real estate on Ninth street, Pittsburg, valued at $15,000, and real estate on Penn avenue, Pittsburg, valued at $25,000, and personal property consisting only of household goods and furniture. On the same day the parties were married, the decedent then being seventy-seven years of age, and his wife about fifty-five years of age. She had no separate estate in possession or expectancy, save the right to a small annuity which bears no comparison to the estate of the decedent.

He died on November 29, 1902, intestate. He left no provision whatever for her. The inventory filed shows personal estate amounting to $32,266.49. The real estate on Ninth street, Pittsburg, was still in his possession, and is part of his estate, and is in a section of the city where values have greatly increased.

His widow, at the solicitation of the decedent's two sons by a former marriage, who are his sole heirs, within a few days after his death went with them to the office of their counsel, who had also been the counsel for their father, and who had prepared and been a witness to the foregoing antenuptial agreement; there it was represented to her that by virtue of the execution of the above recited agreement, she had no interest whatever in the decedent's estate, had no right to administer thereon, whereupon she renounced her right of administration in favor of decedent's sons.

Shortly thereafter, she no longer having a home, or means of living from her husband's estate, upon a disclosure of her situation, and a statement of the facts hereto concealed, she procured counsel and presented her petition averring that she had never been advised of her rights, that her renunciation had been obtained through fraud and misrepresentation, asking for a revocation of the appointment of administration. The answer filed sets up the antenuptial agreement.

The court entered the following decree:

And now to wit: June 18, 1903, this matter having come on for a hearing, the evidence produced on behalf of the petitioner and of the respondents having been heard, and the case having been argued by counsel, upon consideration thereof it is hereby ordered, adjudged and decreed that the letters of administration upon the estate of E. S. Warner, deceased, heretofore granted by the register of wills of said county of Allegheny to R. E. Warner and Lawrence Warner are revoked, that the renunciation of the right to administer on said estate signed by widow, Mary Warner, is null and void; and that the register of wills issue letters of administration on said estate according to law.

*Error assigned* was the decree of the court.

*D. F. Patterson*, with him *B. F. Mevay* and *S. A. Johnston*, for appellant.

*J. M. Stoner*, with him *R. T. M. McCready*, for appellee.

OPINION BY MR. JUSTICE BROWN, January 4, 1904:

The renunciation by the appellee of her right to administer on the estate of her deceased husband was clearly due to her mistaken belief, under the facts as developed at the hearing in the court below, that she had relinquished all of her marital rights by her antenuptial agreement. This was originally executed July 6, 1897, and by its terms the prospective husband, nearly eighty years of age, and possessed of a competence, cut off the woman he was about to marry, twenty years his junior, without a cent for her support from his estate after his death. It is so harsh and unreasonable on its face as to raise the presumption that he designedly concealed from her the value of his estate at the time it was executed: Bierer's Appeal, 92 Pa. 265. The presumption that the appellee was not informed of the value of his estate at that time becomes almost conclusive in the light of the testimony of his attorney, who prepared the paper and witnessed its execution. Having subsequently, as he testified, examined the authorities and satisfied himself that trouble might arise from " an allegation on the part of the widow that she did not have full information as to the amount of the estate of the intended husband at the time of the execution of the paper, "

he deemed it prudent for the protection of his client to have added to it what the parties signed on August 11, 1897.

If this contract is to be sustained, it will only be after those claiming under the deceased husband have, by proper proof, overcome the presumption that there was concealment from the wife, amounting to a fraud upon her, of the value and extent of his estate. This burden was cast upon the appellants at the hearing in the court below, but the only proof submitted by them was the supplemental writing of August 11. Under the circumstances attending its execution equity ought not, and will not, regard it as sufficient for the purpose for which it was offered. There was no proof that, at any time before August 11, the appellee had full knowledge of what estate her husband possessed, or that she had acted intelligently in entering into the contract, most improvident for her; but on that day, when, with the man she was about to marry, they were on their way to the parson's house, she was taken by him into his lawyer's office for the admitted purpose of attempting to do what his attorney had satisfied himself from the authorities ought to have been done on July 6. There, unattended by any one to look after her interests, and confronted by the attorney, zealously trying to protect the estate of the man she was about to marry, she signed the paper purporting on its face to be an acknowledgment that she knew what estate he owned and possessed. The couple then proceeded to the parsonage and became man and wife. Though the paper was read to her, it gave her for the first time information that ought to have been given to her on or before July 6, if the agreement of that day is to have any effect. That she is now to be concluded by the information imparted to her under the circumstances stated offends reason and good conscience; for, when on her way to the altar to take the most sacred vow assumed by woman, it can hardly be seriously contended she could, in a moment, have acted with the intelligence and proper apprehension required by the law to make binding upon her the contract which excludes her from all participation in her husband's estate.

The learned court below, in overruling the exceptions to the findings and conclusions of the judge who heard the application for the revocation of the letters granted to the appellants, was of opinion, without regard to the testimony of Mrs. War-

ner, that the antenuptial agreement was unreasonable, and that there was a presumption of concealment by the decedent which had not been overcome by his sons. While we adopt as correct all that the learned president judge says in holding, without regard to anything testified to by Mrs. Warner, that the antenuptial agreement was unreasonable and that the presumption of concealment by the decedent had not been overcome by his sons, at this time and at this stage in the settlement of the estate, we will pass only upon the question of the right of administration and of the duty of the register in granting letters. Though, as the widow of the deceased, not bound, according to the testimony now before us, by her antenuptial contract, the appellee is entitled to letters of administration, the register is not obliged to grant them to her if it be inexpedient to do so. "Other things being equal the widow is entitled to be preferred:" Wilkey's Appeal, 108 Pa. 567 ; but those otherwise entitled to administer may be rejected on account of the inexpediency of committing the trust to them : Ellmaker's Est., 4 Watts, 34; Bieber's Appeal, 11 Pa. 157; Cornpropst's Appeal, 33 Pa. 537. With the antagonisms and differences existing between the appellee and the two sons of her husband by his former marriage, the best interests of the estate will be promoted by committing the administration of it to some disinterested fit person to be appointed by the register of wills, if the parties to this controversy cannot agree upon an administrator. By such appointment, though the present differences may continue, controversies, and disputes otherwise certain to take place between the appellee and her stepsons will be avoided.

The decree of the court below is reversed and the record remitted, with direction that the register of wills of the county of Allegheny grant letters of administration on the estate of E. S. Warner, deceased, to some disinterested fit person, natural or artificial, to be named by him, at his discretion, if the appellants and appellee cannot agree upon an administrator, the cost of this appeal to be paid out of the estate ; this decree to be without prejudice to the right of the appellants to again raise, on distribution or in proceedings in partition, the question of the validity of the marriage contract, if, in view of what we have said, they can submit the proofs requisite to sustain it as binding upon the appellee.