569 A.2d 1373

**Edmund J. BROKANS, Administrator of the Estate of Baby Girl Smith, Deceased, Appellant,**

**v.**

**Joseph L. MELNICK, M.D. West Park Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued June 21, 1989.

Filed Dec. 20, 1989.

Reargument Denied Feb. 28, 1990.

Gerry Woods, Philadelphia, for appellant.

James M. Penny, Jr., Philadelphia, for Melnick, appellee.

Robert E. Hall, Philadelphia, for West Park Hosp., appellee.

Before McEWEN, POPOVICH and MELINSON, JJ.

POPOVICH, Judge:

Herein, our Court is presented with the opportunity to determine whether a total stranger to a decedent and his or her heirs can qualify as a "fit person" who is entitled to be granted letters of administration pursuant to 20 Pa.C.S.A. § 3155(b)(5). After lengthy consideration of the facts and relevant case law, we are convinced that we are entirely within our authority in holding that the Register of Wills' act of granting letters of administration to appellant was void *ab initio*, and, consequently, Administrator Edmund J. Brokans lacked the capacity to sue on behalf of the estate.[1]

The facts of this case merit in depth recitation. In West Park Hospital, on September 12, 1984, Dr. Joseph L. Melnick, M.D. performed an elective abortion upon Tina Marie

---

1. Herein, we affirm the decision of the lower court. However, our decision rests upon grounds other than those employed by the court below which we may do since appellees raised the issue of appellant's capacity to sue in the court below. *Jones v. P.M.A. Ins. Co.*, 343 Pa.Super. 411, 495 A.2d 203 (1985); *Perri v. Broad Street Hospital*, 330 Pa.Super. 50, 478 A.2d 1344 (1984). While we do not affirm on the reasoning of the trial court, we do not find it in error as the court's general theory that the purposes of the Wrongful Death and Survival Acts are not furthered by this action is sound.

Smith who was then thirteen years of age. Attorney Brokans alleges that, at the time the abortion was performed, Tina Marie was within the third trimester of her pregnancy.[2] Appellant further contends that the fetus, known as Baby Girl Smith, was delivered viable.[3] In fact, he contends that the fetus survived outside the womb for approximately one and one-half hours after the abortion and that Dr. Melnick and the Hospital's staff failed to provide Baby Girl Smith with proper medical care.

Judged from the investigative log of the Philadelphia Medical Examiner, these facts gave rise to a cause celebre in the Philadelphia area. The log is replete with requests from strangers who wanted to be responsible for the burial or cremation of the body, including a request from appellant on September 21, 1984.[4]

On September 11, 1986, one day shy of the second anniversary of Baby Girl Smith's death, Attorney Brokans designated himself as administrator of the baby's estate and instituted this action by writ of summons. On the same day, Attorney Brokans petitioned the Register of Wills of Philadelphia County for the grant of letters of administration for the estate of Baby Girl Smith. In his petition for letters of administration, Attorney Brokans stated:

Petitioner after a proper search has ascertained that decedent left no will and was survived by the following spouse and/or heir(s): None are known, except for the mother, an unidentified juvenile whose interests are adverse to those of the estate and who renounced any claim to the decedent's body at the time of burial. Two years have passed and no other person has applied to administer the estate. Petitioner is a member of the Pa. Bar

2. This allegation is supported by the Coroner's postmortem report which states that the fetus's physical characteristics were consistent with that of a fetus of approximately thirty-two weeks gestation.

3. It is undisputed that the fetus when aborted was viable. The postmortem report indicates the cause of death was the deprivation of resuscitation and life support following an induced delivery.

4. The public was informed of the particulars of this case through television, radio and newspaper accounts.

(Atty ID # 34373), is a fit person to administer the estate, has no interest adverse to the estate, seeks no compensation and seeks appointment in order to preserve and pursue any claims by the estate before the statute of limitations expires. A Death Certificate and Medical Examiner's summary have been requested and will be filed when received. As evidence of death, attached are copies of news clippings.

Based on the foregoing, letters of administration were granted to Attorney Brokans on September 12, 1986. On July 29 and July 30, 1989, ten months after being granted letters of administration, Attorney Brokans, pursuant to Pa.R.C.P. 2205, notified Willie Mae Smith, the mother and legal guardian of Tina Marie, that wrongful death and survival actions had been filed on behalf of her daughter and the father of Baby Girl Smith. The record does not indicate whether notice was ever given to the named father, Anthony Troy. To date, the minor mother, grandmother and father of Baby Girl Smith have taken no action regarding the administration of the child's estate.

On June 26, 1987, Attorney Brokans filed his original complaint against Dr. Melnick and West Park Hospital, alleging negligence in the failure of Dr. Melnick and the West Park staff to provide proper medical care to the viable fetus. In response, Dr. Melnick and West Park Hospital filed preliminary objections which, *inter alia,* challenged Attorney Brokans capacity to sue on behalf of the estate under Pa.R.C.P. 1017(b)(5). Attorney Brokans then filed an amended complaint to which similar preliminary objections were again filed.[5]

In response to the objections, Attorney Brokans contended not only that he was the proper party to sue but also that appellees lacked standing to challenge his capacity to sue. Further, he argued that the Common Pleas Court was without jurisdiction to set aside his appointment as adminis-

---

5. In addition, West Park Hospital requested discovery pursuant to Pa.R.C.P. 209 in order to support its contention that Attorney Brokans lacked capacity to sue.

trator because granting of letters of administration is a judicial act which may not be set aside in a collateral proceeding.

After many months of legal maneuvering, the lower court, by order dated December 6, 1988, granted the preliminary objections of West Park Hospital and dismissed Attorney Brokans' amended complaint against both defendants. The court determined that Attorney Brokans was not the proper party to bring suit under the Wrongful Death and Survivor Acts, 42 Pa.C.S.A. §§ 8301, 8302, rather Tina Marie Smith, mother of the decedent, was the proper plaintiff. Specifically, the lower court stated:

> That the mother of the decedent has shown no interest in this case must be accepted as a fact for the purposes of the motions before us. In fact, in his petition for grant of Letters of Administration, Plaintiff averred that after a proper search he ascertained that the decedent left no will and was survived only by a mother whose interests were adverse to those of the estate. Since she is the Estate under the Statute, her interests cannot be adverse to anyone. Moreover, the petition itself does not identify the mother or any heirs of the decedent. Nor, at no time before filing his petition for grant of Letters of Administration, did Plaintiff notify Tina Marie Smith or her mother, Willie Mae Smith, of his intention to seek appointment as Administrator of the Estate of Baby Girl Smith. The purpose and legislative intent of the Wrongful Death and Survival Acts is to benefit the surviving family and rightful beneficiaries. That purpose is not advanced by the facts of this case.

Trial Court opinion, p. 2.

Thereafter, Attorney Brokans filed a motion for reconsideration which was denied, and this appeal followed.

The court below specifically did not address the issue of whether the grant of letters of administration to Attorney Brokans was void *ab initio*, stating "This Court is mindful of the line of cases that hold that an appointment of an

administrator for an estate is a judicial function that cannot be attacked collaterally."

Ordinarily, the granting of letters of administration by the Register of Wills is a judicial act, and the remedy of an aggrieved party is to appeal to the Orphans' Court, rather than a collateral attack in the Court of Common Pleas. *Freer's Estate*, 353 Pa. 351, 353, 45 A.2d 47, 49 (1946); *West v. Young*, 332 Pa. 248, 249, 2 A.2d 745, 746 (1939).[6] However, as the discussion *infra* will demonstrate, the Philadelphia Register of Wills' grant of letters of administration was void *ab initio*. Consequently, we will permit collateral attack on the decree granting letters to appellant since a void decree can be attacked at any time, in any court. *In re Murray's Estate*, 158 Pa.Super. 504, 510, 45 A.2d 411, 415 (1946).

In Pennsylvania, the person entitled to letters of administration is determined by the application of 20 Pa.C.S.A. § 3155(b) which provides:

(b) Letters of administration.—Letters of administration shall be granted by the register, in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:

(1) Those entitled to the residuary estate under the will.

(2) The surviving spouse.

(3) Those entitled under intestate law as the register, in his discretion, shall judge will best administer the estate,

---

6. Those cases which hold that the Register of Wills' grant of letters is a judicial act not subject to collateral attack are readily distinguishable on their facts from the case at bar. As a rule, those cases so holding deal with a collateral attack on the grant of letters to a person who is entitled to letters under 20 Pa.C.S.A. § 3155(b)(1)–(4), (6), by a person who is also entitled to letters but was not granted letters. Instantly, as the discussion *infra* will explain, Attorney Brokans was not entitled to letters as he was a complete stranger without any interest in the estate. Moreover, appellees would have no standing to challenge appellant's appointment before the Orphans' Court for the same reason that we find appellant had no standing to petition to become administrator. See discussion, *infra*.

giving preference, however, according to the sizes of the shares of those in this class.

(4) The principal creditors of the decedent at the time of his death.

(5) Other fit persons.

(6) If anyone of the foregoing shall renounce his right to letters of administration, the register, in his discretion, may appoint a nominee of the person so renouncing in preference to the persons set forth in any succeeding clause.

Appellant contends that he qualifies as a "fit person" since he is over eighteen years of age and a member in good standing of the Pennsylvania Bar Association. See also, 20 Pa.C.S.A. § 3156, Persons not qualified. Thus, appellant contends that the Register of Wills has the discretion to grant him letters of administration. Such is clearly not the case. Our Supreme Court, in *Friese's Estate*, 317 Pa. 86, 176 A. 225 (1936), specifically stated:

Historically, the right of administration was placed on the ground of interest in the estate. Early judicial construction of the act of 1832 stated: 'The right to administration is put expressly on the ground of interest, on the reasonable presumption that the person most interested to increase the estate is the most competent to administer.' *In re Ellmaker's Estate*, 4 Watts 34, 38. The same principles are expressed by Justice Woodward in *Kellberg's Appeal*, 86 Pa. 129, 133, and in *In re Appeal of Anna B. Sieber*, 1 Penny. 191. It was reiterated in *Reamer's Estate*, 315 Pa. 148, 172 A. 655, where we held that *one who has no financial interest in an estate has no standing to nominate an administrator for it.* (emphasis added).[7]

 Herein, we again reiterate the principle that *one who has no interest in an estate has absolutely no standing to nominate an administrator for it.* It logically

7. We note that this case interpreted the Act of 1917. However, the provisions of that act and the present version thereof which are pertinent to the case before us have not changed in substance.

follows that, instantly, appellant had no standing to petition for letters of administration for an estate in which he admittedly has no financial interest, nor marital or consanguineous relationship. Consequently, we find that the Register of Wills had no authority to grant letters to the appellant and, thus, the grant was a void act.[8]

■ This is not to say that a stranger can never be appointed administrator of the estate of a decedent who dies intestate. In fact, 20 Pa.C.S.A. § 3155(b)(5), which allows "Other fit persons" to be appointed administrator, was enacted to permit strangers to administer the estate under specific circumstances. Those situations fall generally into two categories—the first being when the proper parties to be granted letters under § 3155(b)(1)–(4) have interests adverse to one another and an impartial stranger must be appointed to administer the estate, *Schmidt's Estate*, 183 Pa. 129, 38 A. 464; *Warner's Estate*, 207 Pa. 580, 57 A. 35; *Friese's Estate*, supra, 176 A. 225; and the second being when a party entitled to administer the estate renounces his right to administration in favor of a stranger, 20 Pa.C.S.A. § 3155(b)(6).[9]

■ The facts before us fall into neither "stranger" category. Here, the Register of Wills appointed a complete stranger without any financial, blood or marital interest in

---

**8.** This idea is further supported by our Supreme Court's holding in *Friese's Estate*, 176 A. 225, that the Register of Wills may exercise discretion in appointing an administrator within a class of persons eligible for appointment but cannot ordinarily violate the order outlined by legislation. Therefore, the Philadelphia Register of Wills erred in granting letters to appellant without at least holding a hearing when the Register was specifically informed in appellant's petition that the child was survived by her mother who, even assuming *arguendo* that appellant could legally obtain letters, had priority to the letters pursuant to 20 Pa.C.S.A. § 3155(b)(2).

**9.** Only in the absolute absence of kin or creditors may any fit person be appointed. *Frick's Estate*, 114 Pa. 29, 6 A. 363. However, even when no heirs or creditors exist, the Register of Wills should deny a complete stranger's petition for letters since the Commonwealth of Pennsylvania has sole remaining intestate interest in the estate, 20 Pa.C.S.A. § 2103(6), and is entitled to letters of administration, 20 Pa.C.S.A. § 3155(b)(3). Thus, upon denial and subsequent appeal to the Orphans' Court, the Court will have the power to appoint a proper administrator after a hearing.

the estate as administrator when the decedent's mother, father and grandmother survived the child. The Register failed to hold a hearing regarding appellant's assertion that the interests of the intestate heirs were adverse to the estate. Further, there is no evidence that the interests of the respective heirs are hostile to one another. Importantly, the intestate heirs have not expressly renounced their right to administer the estate.[10]

■ In addition to the bar to granting letters of administration to the appellant, i.e. his lack of interest in the estate, we note the numerous defects in his original petition upon which the letters were granted, and we strongly admonish the Philadelphia Register of Wills for summarily granting such a woefully lacking petition.[11] The most glaring example of the petition's inadequacy is the fact that it was granted without the benefit of a death certificate; rather, the letters were granted based on newspaper clippings. This brings to mind immediately the statement made by Mark Twain in a telegram to the Associated Press upon

10. Appellant contends that the fact that the heirs have not specifically excepted to appellant's appointment as administrator acts as their renouncement in his favor. However, we will not allow a true heir's mere silence to confer authority upon a stranger's appointment, especially when the heir is a minor. Ordinarily, renouncement is an affirmative act which certainly cannot be effected through silence. See generally *Weidner's Estate*, 39 Pa.Super. 120, 124 (1909).

11. We take this opportunity to alert the Legislature, the Pennsylvania Supreme Court and local rules committees to the absolute ease with which letters of administration may be obtained in the hope that new standards will be enacted. Though we presume our brethren act legally, the current method of granting letters of administration is ripe for the perpetration of fraud upon an estate. As this case demonstrates, at least in Philadelphia, a complete stranger to an estate can obtain letters of administration without so much as a hearing to determine whether the information supplied in his petition is true. It is entirely conceivable that a n'eer-do-well could obtain letters based upon a fraudulent petition, use the letters of administration to withdraw funds from the decedent's bank account and quietly abscond with the estate before the true heirs or the Commonwealth even learn of the decedent's death. While we do not herein propose a new system for granting letters—that is not our function—we are certain that allowing a clerk in the local register's office to grant a petition, without so much as a cursory investigation into the veracity of the averments in the petition, does not adequately protect the interest of heirs or the Commonwealth.

learning of a news-report of his untimely demise: "The report of my death was an exaggeration." *Oxford Dictionary of Quotations*, Oxford University Press, 3rd Edition, 1980, 554:22.

Further, the letters were granted without actual notice to the minor mother, father or grandmother of the child. Actual notice to the mother and grandmother was not given until July 29, 1987, almost eleven months after the letters were granted. The father has yet to receive actual notice. Constructive notice through publication was not given until November 24 and December 1 and 8, 1986, almost two months after the letters had been granted. See *In re Coolidge's Estate*, 60 Lanc.Rev. 97, 15 Fiduciary 404 (1966) (register should give notice to heir prior to grant of letters); *In re Frantz's Estate*, 32 D. & C.2d 351, 14 Fiduciary 93 (1964) (letters granted without renunciations or notice to heirs of equal rights void and revoked). See also 20 Pa.C.S.A. § 3162 (personal representative, *immediately* after the grant of letters, shall cause notice thereof to be given). We also note that, in the publication notice of his appointment as administrator, appellant erroneously labelled himself as executor.

In addition, the names of the mother, father and grandmother did not appear in the petition although their names appear throughout the Department of Public Health, Office of the Medical Examiner's records which were created almost two years earlier at the time of death.[12] See 20 Pa.C.S.A. § 3153(2). Thus, appellant's statement that "[A]fter a proper search ..., [no heirs] are known, except for the mother ..." was a blatant falsehood. Moreover, appellant's statement that the mother was an "unidentified juvenile whose interests are adverse to the estate ..." was a self-serving conclusion of law which could only be determined after a factual hearing. Likewise, appellant's contention in his petition that he is a "fit person" to administer

12. In addition, the mother's and grandmother's address and phone number are given in the Medical Examiner's record.

the estate was a conclusion of law which the Register of Wills, not the petitioner, should have made.

In conclusion, we find that Register of Wills' grant of letters of administration to appellant, a stranger to the estate and all persons associated with it, was void *ab initio.* Appellant admittedly had no financial, marital or consanguineous interest in the estate. As jurists, we can not turn our eyes away from such a flagrant abuse of judicial authority, and, consequently, we will permit appellees to attack the appointment collaterally. Moreover, regardless of appellant's perception of the nobility of his purpose and motive for asserting himself as administrator, we see him for what he is, the quintessential officious intermeddler. In fact, appellant, by usurping the true heirs' right to select the administrator of the estate of which they are the ultimate beneficiaries, has come extremely close to violating the Professional Code of Ethics by arrogating to himself rights not available to him.

Order affirmed.

MELINSON, J., concurs in the result.