J-A05022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF LINDA ANNETTE CAMPBELL, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: DR. NZINGHA UHURU AND RICHARD CRADDOCK | : | |
| | : | No. 1062 WDA 2019 |

Appeal from the Order Entered July 11, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 02-17-01544

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.*

MEMORANDUM BY BOWES, J.: **FILED MAY 26, 2020**

Nzingha Uhuru, Ed.D., appeals from the order affirming the appointment by Register of Wills of her brother Darnell Moses, J.D., as the administrator of the estate of their mother, Linda Annette Campbell.[1] We affirm.

Ms. Campbell died intestate in May 2012. She was survived by her two children and her husband, Richard Craddock, who had executed a prenuptial agreement by which he waived the right to an intestate share of Ms. Campbell's estate. The only asset of the estate was the decedent's home in the City of Pittsburgh, the value of which exceeded the liabilities of the estate. Shortly after Ms. Campbell's passing in 2012, her children and Mr. Craddock executed renunciations of the right to administer the estate, but the appointment of an administrator was not sought during the time when the

_____

[1] While the notice of appeal indicates that both Dr. Uhuru and Richard Craddock are the appellants, counsel filed a brief only on behalf of Dr. Uhuru, and she appears to be the only party pursuing this appeal.

* Retired Senior Judge assigned to the Superior Court.

renunciations remained valid. It was not until March 2017, after the siblings' relationship had soured, that Mr. Moses filed a petition for citation to show cause why he should not be appointed as administrator.

A hearing officer took evidence in the matter on September 8, 2017. Mr. and Mrs. Moses, Dr. Uhuru, and Mr. Craddock testified. The record reflects that Mr. Moses and Dr. Uhuru are highly educated, with Mr. Moses having obtained a law degree[2] and Dr. Uhuru then in the process of obtaining her Ed.D. Both had histories of gainful employment when not in school full time: Mr. Moses worked for the Allegheny County Department of Human Services, and Dr. Uhuru had worked as a teacher and served in the Peace Corps. Yet both Mr. Moses and Dr. Uhuru lived in their mother's house rent-free for periods of time following her death based upon their financial circumstances. Neither sibling remained fully current in payment of the obligations associated with the house, such as taxes and homeowner association fees. However, both contributed to the upkeep of the property, with Mr. Moses paying for paint and the installation of new carpeting and a water heater, and Dr. Uhuru investing substantial money in paying back taxes and time in cleaning out the house and garage. Mr. Craddock testified that he was retired from the armed services, suffered from PTSD, and acknowledged that he had no financial

---

[2] Although Mr. Moses passed the bar exam and was employed as an attorney with the University of Pittsburgh, Mr. Moses did not become a licensed attorney.

interest in the estate's asset. Mr. Moses, Dr. Uhuru, and Mr. Craddock each affirmed that he or she was willing and able to serve as administrator or co-administrator of the estate if appointed.

The Register ultimately appointed Mr. Moses as administrator, and Dr. Uhuru timely appealed the decision to the orphans' court. The first judge assigned to the case recused himself after unsuccessful attempts to reach an amicable resolution. Following reassignment, the court remanded the matter to the Register for consideration of whether Mr. Craddock should be appointed administrator as the decedent's surviving spouse in light of 20 Pa.C.S. § 3551 and this Court's decision in **Estate of Tigue**, 926 A.2d 453 (Pa.Super. 2007). After review of the parties' briefs and the transcript of the earlier hearing, the Register issued an opinion and order. It again ordered that letters of administration be granted to Mr. Moses, based upon its conclusion that the expired renunciations had no impact and that Mr. Craddock's lack of a financial interest in the decedent's estate disqualified him from serving as administrator.

Following another appeal and briefing by the parties, a third judge of the orphans' court affirmed the order of the Register. Dr. Uhuru filed a timely notice of appeal to this Court, and both she and the orphans' court complied with Pa.R.A.P. 1925. Dr. Uhuru presents the following questions for our consideration:

> [1.] Whether the [orphans'] court abused its discretion and committed an error of law by failing to appoint [Mr.]

Craddock, as surviving spouse[,] to administer Ms. Campbell's estate[.]

[2.] Whether the [orphans'] court abused its discretion in determining that the prenuptial agreement that [Mr.] Craddock, the surviving spouse[,] signed barred him from serving as the administrator to Ms. Campbell's estate[.]

[3.] Whether the [orphans'] court abused its discretion and committed an error of law by affirming the order of the Register which appointed [Mr.] Moses as the administrator to Ms. Campbell's estate.

[4.] Whether the [orphans'] court failed to consider all relevant evidence of record to support its decision to deny [Mr.] Craddock's appointment and instead grant [Mr.] Moses'[s] appointment.

Dr. Uhuru's brief at 8 (unnecessary capitalization omitted).[3]

We begin with an examination of the applicable law. Where, as here, the orphans' court decided a challenge to the Register's ruling without taking new evidence, our review is limited to determining whether the Register abused its discretion. **See In re Estate of Tigue**, 926 A.2d 453, 456 (Pa.Super. 2007). "An abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, or misapplication of law." **Id**. at 456-57 (cleaned up).

_____

[3] The rest of Dr. Uhuru's argument brief does not track the four distinct issues suggested by her statement of questions presented. Instead, her arguments fall into one of two categories: (1) under the applicable law, Mr. Craddock should have been the preferred administrator and was not disqualified by his lack of a financial interest in the estate; and (2) even if Mr. Craddock was properly bypassed as administrator, the selection of Mr. Moses was an abuse of discretion. Therefore, we address our discussion *infra* to those two issues.

"In the usual circumstance the Register of Wills has the discretion to appoint an administrator from within the class of persons eligible for that appointment." ***In re Estate of Klink***, 743 A.2d 482, 484 (Pa.Super. 1999). Our legislature has provided the hierarchy of eligibility as follows:

> **(b) Letters of administration.--**Letters of administration shall be granted by the register, in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:
>
> (1) Those entitled to the residuary estate under the will.
>
> (2) The surviving spouse.
>
> (3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.
>
> (4) The principal creditors of the decedent at the time of his death.
>
> (5) Other fit persons.
>
> (6) If anyone of the foregoing shall renounce his right to letters of administration, the register, in his discretion, may appoint a nominee of the person so renouncing in preference to the persons set forth in any succeeding paragraph.

20 Pa.C.S. § 3155(b).

Our legislature also enacted a list of disqualified persons, such as minors, persons accused of murdering the decedent, and persons "found by the register to be unfit to be entrusted with the administration of the estate." 20 Pa.C.S. § 3155. Additionally, the courts of the Commonwealth have long held that one must have an interest in the estate to be appointed to administer

- 5 -

it. *See*, *e.g.*, *In re Friese's Estate*, 176 A. 225, 227 (Pa. 1934) ("[A]dministration should only be granted to those having an interest in the estate."); *Brokans v. Melnick*, 569 A.2d 1373, 1376 (Pa.Super. 1989) (confirming the continuing applicability of *Friese's Estate* under later versions of the statute). *See also Estate of Tigue*, *supra* at 458 (noting "persons interested in the estate must be given preference pursuant to 20 Pa.C.S.A. § 3155"). This requirement that an administrator have an interest in the estate is grounded upon "the reasonable presumption that the person most interested to increase the estate is most competent to administer." *Friese's Estate*, *supra* at 227.

That most interested person is often the surviving spouse, who is accordingly given priority over other intestate heirs. However, such priority of right "is not an absolute one." *In re Boytor's Estate*, 198 A. 484, 486 (Pa.Super. 1938). The statute expressly states that the register is free to depart from the statutory order "for good cause." 20 Pa.C.S. § 3155(b). Further, our Supreme Court has held that the surviving spouse is not entitled to administer an estate in the face of a prenuptial agreement that waives his or her interest in the estate. *See Friese's Estate*, *supra* at 227 ("The widow is not entitled to administration. Not only does her antenuptial agreement, if it is valid, bar any interest, but if it is invalid, she has a direct claim against the estate because of its invalidity.").

Dr. Uhuru argues that the Register erred in not appointing Mr. Craddock as administrator as Ms. Campbell's surviving spouse. She contends that, because the prenuptial agreement did not include a waiver of his right to serve as administrator, he still qualified.[4] **See** Dr. Uhuru's brief at 22-25 (contrasting **Estate of Friedman**, 398 A.2d 615, 620 (Pa. 1978), in which the antenuptial agreement included a release of the right to be executor or personal representative of the spouse's estate). Dr. Uhuru further suggests that the more recent cases expand the definition of the necessary "interest" in the estate, such that anyone falling within one of the groups enumerated in 20 Pa.C.S. § 3155(b) has a requisite interest. **Id**. at 27-30 (citing, *inter alia*, **Estate of Tigue**, **supra**).

We are unpersuaded by Dr. Uhuru's arguments. Based upon **Friese's Estate** and **Estate of Tigue**, we conclude that, even if Mr. Craddock's acknowledged lack of a financial interest in the estate via the prenuptial agreement was not a *per se* disqualification from his eligibility to serve as administrator of Ms. Campbell's estate, it constituted sufficient "good cause" to justify the Register's choice to skip past him in the hierarchy of preference

---

[4] Dr. Uhuru also relies upon this Court's decision in **Musko v. Musko**, 668 A.2d 561, 563 (Pa.Super. 1995), that an antenuptial agreement's waiver of support and alimony did not include a waiver of alimony *pendente lite* because APL was not expressly mentioned. **See** Dr. Uhuru's brief at 22-23. Dr. Uhuru neglects to mention that our Supreme Court reversed this Court's decision. **Musko v. Musko**, 697 A.2d 255, 256 (Pa. 1997) ("The Superior Court erroneously believed that without express mention of the specific term APL, the agreement could not bar entitlement to APL.").

and instead appoint someone who had an incentive to maximize the value of the estate. *See Friese's Estate*, *supra* at 227; *Estate of Tigue*, *supra* at 458. Accordingly, Dr. Uhuru's arguments that the Register erred in declining to grant letters of administration to Mr. Craddock warrant no relief.

Dr. Uhuru's remaining claims challenge the fitness of Mr. Moses to serve as administrator. Specifically, Dr. Uhuru contends that Mr. Moses "is unqualified to be the Administrator based on a history of financial neglect and his treatment of the subject asset." Dr. Uhuru's brief at 33. Dr. Uhuru also avers that the Register's choice of Mr. Moses was based in part upon its erroneous belief that Mr. Moses is an attorney, and that the continued reliance upon this error by the orphans' court establishes that it did not review the record when affirming the Register's decision. *Id*. at 31-33. Dr. Uhuru argues that, upon a full and accurate review of the undisputed facts, the selection of Mr. Moses as administrator is against the greater weight of the evidence. *Id*. at 33-37.

With Mr. Craddock ruled out based upon his lack of a financial interest in the estate, the governing statute required the Register, absent good cause shown, to appoint someone with the next-highest class, namely: "Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class." 20 Pa.C.S. § 3155(b)(3). The only

people within that class were Mr. Moses and Dr. Uhuru, who had equal shares. *See* N.T. Hearing, 9/8/17, at 5.

The Register concluded that Mr. Moses was the better choice of the two because he "is an attorney and has real estate experience" and Dr. Uhuru's handling of the estate's asset had been in her own best interests rather than the best interests of the estate. *See* Opinion and Order, 4/30/18, at ¶¶ 9-10. The orphans' court found no abuse of discretion, agreeing that "Mr. Moses is an attorney, who is quite capable of properly administering the estate." Orphans' Court Opinion, 8/30/19, at 3.

Notably, Dr. Uhuru does not argue that she is better qualified to administer the estate, or contest the finding, supported by the record, that she has shown interest in the estate's asset only during the occasions following her mother's death when it was beneficial for her. *See*, *e.g.*, N.T. Hearing, 9/8/17, at 81-84 (Dr. Uhuru testifying that she left to serve in the Peace Corps shortly after Ms. Campbell died, that she returned to Pittsburgh years later to assist her ailing father, and that she moved into the house thereafter because of its proximity to Point Park University). Instead, she attacks Mr. Moses's fitness and persists in advocating for Mr. Craddock as the better alternative. *See* Dr. Uhuru's brief at 33, 39. As we have affirmed the Register's decision to bypass Mr. Craddock, we examine only whether any of Dr. Uhuru's contentions establish that the choice of Mr. Moses instead of her was the

product of "bias, partiality, prejudice, ill-will, or misapplication of law" rather than a mere error in judgment. ***Estate of Tigue***, ***supra*** at 456-57.

We cannot conclude that an abuse of discretion occurred in this case. First, it does not appear that the misstatement about Mr. Moses being "an attorney" was material to the decision. Nothing in the reasoning of the Register or the orphans' court suggests that Mr. Moses was appointed because of a mistaken belief that he had passed the bar exam or held a license to practice law. Rather, in context it appears that it was Mr. Moses's education and familiarity with the law that recommended him for the position over Dr. Uhuru, whose professional experience is as an educator and STEM coordinator. ***See*** N.T. Hearing, 9/8/17, at 80-81. Further, Dr. Uhuru presents no authority to suggests that Mr. Moses's less-than-stellar record in staying current on his bills disqualifies him from serving, or necessarily outweighs the extensive experience he has in his employment, including managing Allegheny County's funding from the state and federal governments. ***See id***. at 7-11.

At bedrock, Dr. Uhuru's argument is that this Court should reweigh the evidence and decide that Mr. Moses was not the best choice to administer Ms. Campbell's estate. That is not our role. ***See Estate of Tigue***, ***supra*** at 456 (providing our review is limited to whether register abused its discretion). Since Dr. Uhuru has failed to demonstrate that the Register's decision was legally erroneous or based upon improper considerations, she is entitled to no relief from this Court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2020