J-A08040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FORWARD, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MIRJANA JANIC A/K/A MIRIANA | : | No. 191 EDA 2020 |
| JANIC | : | |

Appeal from the Order Entered December 6, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 171000844

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 21, 2021**

Appellant, Forward LLC, (at times, "Appellant" or "Forward") appeals from the order entered by the Court of Common Pleas of Philadelphia County, which presided over a bench trial on Appellant's action in Ejectment and Quiet Title and declined to divest Appellee Mirjana AKA Miriana Janic of her possession of the property at 120 E. Arizona Street. We affirm.

The trial court aptly sets forth the relevant facts and procedural history of the instant case, as follows:

> Plaintiff [hereinafter, "Appellant"] Forward LLC, filed a lawsuit against Defendant [hereinafter, "Appellee"], Mirjana Janic A.K.A. Mirana Janic, for an action in Ejectment and to Quiet Title. On October 7, 2019, a one-day bench trial commenced[, after which] the court entered a judgment as to Count I [(Ejectment)] of Forward LLC's Third Amended Complaint[. . .] in favor of Appellee,

---

[*] Former Justice specially assigned to the Superior Court.

Mirjana Janic [ ], and as to Count II [(Quiet Title)] . . . in favor of Appellant, Forward LLC.

On October 21, 2019, Appellant Forward LLC filed a Post-Trial Motion. The court scheduled Appellant's Post-Trial Motion hearing for December 4, 2019, where Appellant argued that the administrator of the estate was proper and that the court erred in not giving Appellant possession. On December 4, 2019, the court denied Appellant's Post-Trial Motion. On January 3, 2020, Appellant filed a statement of errors complained of on appeal.

FACTS

[The following facts were developed at the trial of October 7, 2019:] Appellant, Forward LLC, was created in April 2015, represented by its sole member, Max Samuel Glass. N.T., 10/07/19, at 23. [Glass] became interested in the property known as 1920 East Arizona Street because he wanted a vacant lot in the East Kensington section of Philadelphia. *Id*. [Glass] stated that the lot was not in good condition because the taxes were not paid on the property, and there were violations against the property. *Id*. Also, the City [of Philadelphia] knocked down a structure on the lot, and the property had not been transacted in more than 20 years. *Id*.

[Glass] searched through Ancestry and Newspaper.com to find the owners of the property who happened to be Michael Snow, Sr., and Viola Snow, who were deceased. N.T. at 24. Through his search, [Glass] was also able to find that Viola Snow predeceased Michael Snow, Sr. and found Michael Snow, Sr.'s children, Michael Snow, Jr. and Debra. *Id*. [Glass] then found that the estate for Michael Snow, Sr. had not been probated. *Id*.

Once [Glass] learned that the estate was not probated, he offered to help Michael and Debra with the probate process. N.T. at 26. Further, it was agreed by the siblings, Michael and Debra, that they would prefer to have the estate administered by a third party. *Id*.

[Max Glass] testified that Debra and Michael agreed to the terms for the sale of the property, in writing, that (1) "those who were the lawful heirs of the estate now of the property and the debt against the property have an agreement in place" with [Appellant] Forward LLC; (2) Appellant would pay the estate for the property;

- 2 -

(3) Appellant would prepare the renunciation forms; (4) and Debra and Michael would send the signed forms to [Glass, acting on behalf of Appellant] for Appellant to probate the estate. N.T. at 27.

Additionally, [Glass] worked with Debra and Michael to obtain the death certificates for both Michael Snow, Sr., and Viola Snow. *Id*. [Glass] then testified that they used the death certificates to file a two[-]year petition to obtain from "Orphan's Court a Writ to grant us the right to file probate." *Id*.

After obtaining the writ, [Glass] brought a certified copy to the Register of Wills with the renunciation forms and death certificate. *Id*. [Glass] had an individual, Kylie Austin Young, appointed as the administrator of the estate of Michael Snow, Sr. and worked with the administrator to file the necessary documents to probate. *Id*. [Glass] testified that Kylie Austin Young was appointed to administer the estate on June 20, 2017, and the deed to the property was signed on July 19, 2017. N.T. at 29, 35. [Glass] also testified that he was present during the closing and the signing of the deed. N.T. at 36.

After closing, [Glass] contacted the City of Philadelphia Department of Revenue and found that there were outstanding taxes and Municipal debts and liens. While preparing to satisfy the debts on the property, [Glass] received a call from a male named Janic. N.T. at 42. After speaking with [Janic], [Glass] testified that he clearly had a title issue "on his hands" and that Janic claimed that he owned the property and had an order [to that effect]. N.T. at 43. However, [glass] testified that before he went to closing, he did a title search and did not find anything on the record. Id.

After Appellant [Forward LLC] purchased the property on July 19, 2017, [Glass observed] that the property was abandoned; however, [he noticed] there was a fence about five and a half feet high enclosing the lot and other adjacent properties. N.T. at 48. [Glass] testified that he went over the fence to view the property. N.T. at 50.

[When asked by defense counsel at trial whether] he [saw] anyone on the property, [Glass] responded, "I am not sure." *Id*. Additionally, defense counsel asked whether the fence stopped at a certain house, or [if] the fence [was] open[, to which Glass]

responded that the fence stopped at a gate or a house. *Id*. Defense counsel further asked [Glass if] it ever occur[red] to him to knock on the door of the house [situated at the end of the fence], and [Glass] responded in the negative. N.T. at 64-65.

Further, defense counsel asked [Glass] whether he knows how much the sale price was for the property, and [Glass] replied $17,000 [plus] the debt against the property. N.T. at 59. However, defense counsel stated that, based on the agreement of sale, the contracted price was $12,000. N.T. at 59. Further, [Glass] testified that though Michael Snow, Jr. signed the agreement of sale, he knew that Mr. Snow was not the administrator of the estate. N.T. at 61. Additionally, defense counsel asked whether [Glass] had any documents that would show that Michael Snow, Jr. was the owner of the property. N.T. at 70. [Glass] state, "No, he was not an owner of the property." *Id*.

After hearing testimony from [Glass], Michael Snow, Jr. was called to testify and stated that his mother, Viola Snow, died on November 2, 1974 and his father, Michael Snow, Sr., died November 3, 1992. N.T. at 78-79. Both of his parents at the time of death were living in Florida. N.T. at 79. Defense counsel then asked Mr. Snow whether he signed the agreement of sale, which he answered in the affirmative. N.T. at 81. Defense counsel [followed by asking] if he signed in his individual capacity or as an executor, to which Mr. Snow responded, "I honestly can't answer that." N.T. at 84. When asked [why he could not,] Mr. Snow responded that he did not know. N.T. at 85.

[When Mr. Snow was asked how much money he received from Appellant for the property], he responded, "I honestly don't remember." *Id*. However, Mr. Snow testified that the plan was to split the proceeds between him and his sister, Debra. *Id*. Mr. Snow also testified that he received a check from Forward LLC but could not remember how much the check was for. N.T. at 88.

The court asked Michael Snow, Jr. whether the deed was signed, and he answered, "I have no idea to be honest with you." N.T. at 87. The court then asked, "You don't know if the administrator signed the deed? Did you have an administrator of the estate?" *Id*. Michael Snow, Jr. answered in the affirmative. *Id*.

- 4 -

The court then asked whether it was Appellant, Forward LLC, who selected the administrator of the estate, and Michael Snow, Jr. answered, "correct." *Id*. The court further asked the witness whether he ever met the administrator, and he responded that he did not remember. *Id*. However, both he and his sister signed renunciation forms to allow the administrator chosen by the Appellant to administer the estate. N.T. at 87-88. Mr. Snow testified that he went with his grandson once to visit the property around 12 years ago and when he visited the property, he did not see a fence on the property. N.T. at 82-83. During Appellant's case, neither the administrator Kylie Austin Young, nor Mr. Snow's sister, Debra, was called to testify, nor was either present in the courtroom.

Once Appellant rested its case, the defense called Appellee, Mirjana Janic [ ] to testify. Janic testified that there is a fence around five lots, including the lot in this case, and it has been there for 30 years. N.T. at 102. Janic testified that her father asked permission from the City of Philadelphia to erect the fence around the lots. *Id*.

Further, Janic was asked whether she has ever seen Appellant's representative, Mr. Glass, in her yard. *Id*. [She] stated, "no." *Id*. Additionally, [she] stated that there is a dog in her yard. N.T. at 103. The court then asked [if she paid taxes on the 1920 East Arizona property] before having her adverse possession case heard in another court; [she] answered, "no." *Id*. [Mirjana Janic confirmed that she never paid taxes on the property between the years 1981 to 2019. N.T. at 105.

[] Mirolou Janic testified that there is a fence that encloses the lot, and it is about 8 feet [tall]. *Id*. Mr. Janic was asked whether he had seen Forward LLC representative, Max Glass, in the lot. *Id*. Mr. Janic testified that he had not and that his mom is in the yard everyday along with their dog. N.T. at 125-126.

After the trial, . . . as to Count I [(Ejectment)] of Plaintiff's/Appellant's Third Amended Complaint, the court found in favor of Defendant/Appellee, Mirjana Janic A/K/A Mirana Janic, because Appellee may have an interest in the property through adverse possession. Additionally, the court found as to Count II [(Quiet Title)] . . . in favor of Appellant, Forward LLC, because based on the testimony and exhibits of the parties, Michael A. Snow, Jr.'s interest in the property known as 1920 E. Arizona

Street was transferred to Forward LLC, but there is no evidence to prove that the other five surviving children of [Viola and] Michael Snow, Sr. transferred their interests.

Trial Court Opinion, 2/19/20, at 1-6.

The trial court entered an Order of October 10, 2019, setting forth its disposition of Forward's actions. Though the order states at the outset that the trial court "finds in favor" of Defendant Mirjana Janic and against Forward on the action in Ejectment, and "finds in favor of" Forward and against Mirjana Janic on the action in Quiet Title, it goes on to define precisely what these findings comprise in a manner that materially calls into question Forward's administration of the estate of Michael Snow, Sr., and, consequently, Forward's lawful title to the subject property.

Specifically, with respect to the court's decision "in favor of" Forward on the claim of Quiet Title, the Order provides:

Based upon the presentation of testimony and exhibits of the parties, Forward has an interest in the property known as 1920 E. Arizona Street, Philadelphia, PA 19125. Forward has presented sufficient evidence to show that the interest of Michael A. Snow, Jr., in the property . . . was a property transfer by sale by the Administrator of the Estate of Michael Snow, Sr. to Forward. However, no reliable evidence was presented to prove to the [trial] court that the other five surviving children of Michael Snow, Sr. transferred any of their interest in the property to Forward.

. . .

[After the court notes that Janic claims adverse possession of the subject property, the court instructs that] [e]ither party may file another action in Quiet Title to determine what interest, if any, Janic may have to the property known as 1920 E. Arizona Street by adverse possession.

> Moreover, Forward may file an additional action in Quiet Title to prove, by proper documentation, that all known heirs and their assigns of the Estate of Michael A. Snow, Sr. have properly transferred their interest to Plaintiff, Forward LLC.

Trial Court Order, 10/10/19, at 1-2.

On October 21, 2019, Forward filed a post-trial motion. The trial court scheduled a hearing for December 4, 2019, at which Forward argued that the administrator of the estate was proper and that the court erred in not giving Forward possession. By Order of December 4, 2019, the court denied Forward's post-trial motion.

On December 31, 2019, Forward filed a timely notice of appeal and provided the trial court with a court-directed concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The court, in turn, has supplied this Court with a Pa.R.A.P. 1925(a) opinion.

Consistent with its Rule 1925(b) statement, Forward's brief presents the following questions for this Court's consideration:

1. Did the Trial Court err as a matter of law in not holding in favor of Forward in the action for the ejectment of Appellee, Marjana Janic A/K/A Mariana Janic from 1920 E. Arizona?

   a. Did Forward establish the necessary elements to prove an action for ejectment?

   . . .

2. Should, as a matter of law, the trial court's order, as to Count 1 of the Third Amended Complaint, Ejectment, be reversed in favor of Forward and against Janic?

Appellant's brief at 6.

As Appellant's enumerated claims coalesce to challenge the trial court's order denying his action in ejectment, we note that our standard of review in an ejectment action is "limited to a determination of whether the [court] committed an error of law or an abuse of discretion," and we observe that the decision of the court in an ejectment case "will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." **Roberts v. Estate of Pursley**, 718 A.2d 837, 840 (Pa. Super. 1998).

In **Wells Fargo Bank, N.A. v. Long**, 934 A.2d 76, 78 (Pa. Super. 2007) (citation omitted), we noted that "ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession," and that the purpose of such an action is to determine "the immediate rights between plaintiff and defendant involved in that particular litigation." We continued that "ejectment is a possessory action only, and can succeed only if the plaintiff is out of possession, and if he has a present right to immediate possession." **Id**. at 79 (quoting **Brennan v. Shore Brothers, Inc.**, 110 A.2d 401, 402 (Pa. 1955)). Stated another way, "Ejectment is a possessory action wherein a plaintiff must prove the right to exclusive possession vis-a-vis proof of paramount title." **Roberts v. Estate of Pursley**, 700 A.2d 475, 480 (Pa. Super. 1997) (internal quotation marks omitted).

Here, Forward maintains that it became the record title owner of 1920 E. Arizona when the previous owner, the Estate of Michael A. Snow, Sr., conveyed to Forward title in fee simple absolute through proper administration

of the estate. However, exercising its role as finder of fact in the parties' trial, the trial court called into serious question the administration of the estate and concluded it could not rely on the appointment of letters of administration. In turn, therefore, the court declined to find Forward's title superior to Janic's claim of adverse possession.

According to the trial court, the testimony of Max Glass revealed that, at most, only two of the seven Snow siblings who stood as equal heirs to the estate of their father, Michael Snow, Sr., had renounced their rights to administration or, for that matter, even knew about the sale of the property at 120 E. Arizona St. The court was further troubled by both the testimony of Michael Snow, Jr., who explained that it was Max Glass, and not the estate, who selected the administrator, and evidence that otherwise established Forward never made a requisite demonstration that the heirs held adverse interests with one another so as to permit appointment of another administrator. We agree with the trial court's concerns in this regard.

In Pennsylvania, the person entitled to letters of administration is determined by the application of 20 Pa.C.S.A. § 3155(b), which provides:

> "(b) Letters of administration.--"Letters of administration shall be granted by the register, in such for as the case shall require, to one or more of those hereinafter mentioned, and except for good cause, in the following order:
>
> (1) Those entitled to the residuary estate under the will.
>
> (2) The surviving spouse.

(3) Those entitled under intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes and shares of those in this class.

(4) The principal creditors of the decedent at the time of his death.

(5) Other fit persons.

(6) If anyone of the foregoing shall renounce his right to letters of administration, the register, in his discretion, may appoint a nominee of the person so renouncing in preference to the persons set forth in any succeeding clause.

20 Pa.C.S.A. § 3155(b).

This Court's decision in **_Brokans v. Melnick_**, 569 A.2d 1373 (Pa. Super. 1989), provides a helpful discussion on the proper construction of 20 Pa.C.S.A. § 3155(b) for our purposes. **_Brokans_** presented the question of whether the Register of Wills properly granted letters of administration to an attorney seeking to commence a medical malpractice lawsuit on behalf of the estate of a child whose highly publicized death occurred shortly after her late-term, live birth to an unnamed teen undergoing a procedure to terminate pregnancy.

This Court found that the attorney was an improper administrator because he was "a complete stranger without any financial, blood or marital interest in the estate" when the decedent's immediate family members had survived her. **_Id_**. at 29-30, 569 A.2d at 1377. The court noted that these intestate heirs had "not expressly renounced their right to administer the estate." **_Id_**. at 30, 569 A.2d at 1377. Accordingly, the court recognized its authority to override the Register of Wills' quasi-judicial act of issuing letters of administration and to grant relief based on the plaintiff's collateral attack.

Specifically, this Court explained:

Appellant contends that he qualifies as a "fit person" since he is over eighteen years of age and a member in good standing of the Pennsylvania Bar Association. **See also**, 20 Pa.C.S.A. § 3156, Persons not qualified. Thus, appellant contends that the Register of Wills has the discretion to grant him letters of administration. Such is clearly not the case. Our Supreme Court, in **Friese's Estate**, 317 Pa. 86, 176 A. 225 (1936), specifically stated:

> Historically, the right of administration was placed on the ground of interest in the estate. Early judicial construction of the act of 1832 stated: 'The right to administration is put expressly on the ground of interest, on the reasonable presumption that the person most interested to increase the estate is the most competent to administer.' **In re Ellmaker's Estate**, 4 Watts 34, 38. The same principles are expressed by Justice Woodward in **Kellberg's Appeal**, 86 Pa. 129, 133, and in **In re Appeal of Anna B. Sieber**, 1 Penny. 191. It was reiterated in **Reamer's Estate**, 315 Pa. 148, 172 A. 655, where we held that *one who has no financial interest in an estate has no standing to nominate an administrator for it.* (emphasis added).[]

[**Friese's Estate**, 176 A. at 229.]

Herein, we again reiterate the principle that *one who has no interest in an estate has absolutely no standing to nominate an administrator for it.* It logically follows that, instantly, appellant had no standing to petition for letters of administration for an estate in which he admittedly has no financial interest, nor marital or consanguineous relationship. Consequently, we find that the Register of Wills had no authority to grant letters to the appellant and, thus, the grant was a void act.[]

This is not to say that a stranger can never be appointed administrator of the estate of a decedent who dies intestate. In fact, 20 Pa.C.S.A. § 3155(b)(5), which allows "Other fit persons" to be appointed administrator, was enacted to permit strangers to administer the estate under specific circumstances. Those situations fall generally into two categories: the first being when the proper parties to be granted letters under § 3155(b)(1)-(4) have interests adverse to one another and an impartial stranger

must be appointed to administer the estate, *Schmidt's Estate*, 183 Pa. 129, 38 A. 464; *Warner's Estate*, 207 Pa. 580, 57 A. 35; *Friese's Estate*, *supra*, 176 A. 225; and the second being when a party entitled to administer the estate renounces his right to administration in favor of a stranger, 20 Pa.C.S.A. § 3155(b)(6).[]

The facts before us fall into neither "stranger" category. Here, the Register of Wills appointed a complete stranger without any financial, blood or marital interest in the estate as administrator when the decedent's mother, father and grandmother survived the child. The Register failed to hold a hearing regarding appellant's assertion that the interests of the intestate heirs were adverse to the estate. Further, there is no evidence that the interests of the respective heirs are hostile to one another. Importantly, the intestate heirs have not expressly renounced their right to administer the estate.[]

Further, the letters were granted without actual notice to the minor mother, father or grandmother of the child. Actual notice to the mother and grandmother was not given until July 29, 1987, almost eleven months after the letters were granted. The father has yet to receive actual notice. Constructive notice through publication was not given until November 24 and December 1 and 8, 1986, almost two months after the letters had been granted. . . . We also note that, in the publication notice of his appointment as administrator, appellant erroneously labelled himself as executor.

In addition, the names of the mother, father and grandmother did not appear in the petition although their names appear throughout the Department of Public Health, Office of the Medical Examiner's records which were created almost two years earlier at the time of death.[12] See 20 Pa.C.S.A. § 3153(2). Thus, appellant's statement that "[A]fter a proper search ..., [no heirs] are known, except for the mother ..." was a blatant falsehood. Moreover, appellant's statement that the mother was an "unidentified juvenile whose interests are adverse to the estate ..." was a self-serving conclusion of law which could only be determined after a factual hearing. . . .

In conclusion, we find that Register of Wills' grant of letters of administration to appellant, a stranger to the estate and all persons associated with it, was void *ab initio.* Appellant

admittedly had no financial, marital or consanguineous interest in the estate. As jurists, we cannot turn our eyes away from such a flagrant abuse of judicial authority, and, consequently, we will permit appellees to attack the appointment collaterally. . . .

***Brokans v. Melnick***, 569 A.2d 1373, 1376–77 (Pa. Super. 1989).

Squarely at issue in the present case is the same principle that, barring the applicability of an express exception, one who has no interest in an estate lacks standing to nominate an administrator for it. At the conclusion of the parties' trial, the trial court made factual determinations leading it to conclude that Forward LLC, acting through Max Glass as its sole representative, committed the same proscribed acts that invalidated the letters of administration in ***Brokans***.

The court found that Forward, acting through Max Glass, had no relationship to the estate at the time he unilaterally selected a purportedly "disinterested" person and nominated her as administrator for it. As such, the court appropriately determined that it was Forward's obligation to show that the person of its choice was qualified to serve as administrator under Section 3155(b)(5), "Other fit persons."

Section 3155(b)(5) of the statute allows for an impartial stranger to administer an estate upon proof that either the proper parties to be granted letters under § 3155(b)(1)-(4) have interests adverse to one another or a party entitled to administer the estate renounces his right to administration in favor of a stranger, 20 Pa.C.S.A. § 3155(b)(6).[] Initially, we note that the impartiality of the nominated administrator was placed in serious doubt as it was Glass alone—without any participation by Debra and Michael Snow, Jr.—

- 13 -

who hand-picked her to be the administrator of the Snow estate. The Snows neither knew of her nor ever met her, and Forward failed to make the administrator available to testify at trial.

Furthermore, with respect to whether Forward showed that the administrator of its choice satisfied either of the two prescribed ways one may qualify as an "other fit person[]," the trial court reasonably concluded it did not. At trial, Forward never broached the topic, let alone established, that the Snow heirs entitled to administer the estate either held adverse interests or, together, renounced their rights in favor of Forward's chosen administrator.

Regarding the heirs' rights of renunciation in particular, it bears noting that Glass knew from his research that seven children and a multitude of grandchildren survived Viola and Michael Snow, Sr., and yet he elected to deal only with Michael Snow, Jr. and his sister Debra, without any indication that either of the two had been designated executor of their parents' estate or otherwise were acting with the consent of their siblings. Renunciation by all heirs, therefore, did not occur.

Therefore, we find no error with the trial court's concern that the Register of Wills had no authority to grant letters in the present matter, rendering the administration of the estate a void act. When the court's order is read in its entirety, it is clear that the language finding "in favor" of Forward on its petition to Quiet Title is thus limited by the court's synchronous conclusion delineated elsewhere in the order that Forward possesses a narrow

interest in the 1920 E. Arizona equivalent to Michael Brown, Jr.'s interest as just one of seven direct heirs to the estate.

Indeed, the trial court found as fact that Forward neither contracted with, nor acquired renunciations from, the remaining five Brown siblings. As such, Forward cannot be said to have effected proper administration of the estate that would permit it to claim the superior title necessary to substantiate Forward's claim for Ejectment.

The court's order provides that such deficiencies in Forward's interest in the 1920 E. Arizona St. property defeated its claim for Ejectment, as Forward did not met its burden to prove that it possessed adequate title to the property entitling it to demand removal of the Janics. Ancillary to that conclusion was the court's additional observation that Forward may remedy this problem by acquiring proper documentation that all known heirs and their assigns of the Estate of Michael A. Snow, Sr., have properly transferred their interest to Plaintiff, Forward LLC, and then filing a subsequent action in Quiet Title to determine what Janic's interest, if any, in 1920 E. Arizona St. may be.

For the foregoing reasons, therefore, we discern no error with the court's order declining to find in Forward LLC superior title to the property at 120 E. Arizona St. that would permit the ejectment of the Janics. Accordingly, we affirm the order entered below.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/21/2021